In re **LINDBERGH PLAZA ASSOCIATES, L.P.,** Debtor.

**GERMANIA BANK, a Federal Savings Bank, Movant,**

v.

**LINDBERGH PLAZA ASSOCIATES, L.P., Respondent.**

**Bankruptcy No. 90–00320–BKC–JJB.**

United States Bankruptcy Court, E.D. Missouri, E.D.

June 1, 1990.

Steven M. Hamburg, St. Louis, Mo., for debtor-in-possession.

Gregory D. Willard, Lloyd A. Palans, Terry Pabst, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for Germania Bank.

## FINDINGS AND CONCLUSIONS

JAMES J. BARTA, Bankruptcy Judge.

At Saint Louis, in this District, this 1st day of June, 1990.

On May 3, 1990, at the conclusion of the trial of these matters, the Court announced a summary of its findings and conclusions and orders from the bench. In preparing these written Findings and Conclusions, the Court has considered the record as a whole, including the Debtor's objections to the Movant's Proposed Findings of Fact and Conclusions of Law, and the Movant's Reply to the Debtor's objections.

## FINDINGS OF FACT

1. Germania Bank, a Federal Savings Bank ("Germania") filed its *Motion for Order Prohibiting Use of Cash Collateral and Requiring Segregation and Accounting,* and a *Notice Pursuant to 11 U.S.C. § 546(b)* on February 2, 1990 ("Germania's Cash Collateral Motion").

2. Germania filed its *Motion for Relief from Automatic Stay Or, In the Alternative, For Adequate Protection* on February 5, 1990 ("Germania's Motion for Relief").

3. Debtor filed its *Application for Cash Collateral Order* on February 16, 1990 ("Debtor's Application").

4. Germania filed its *Motion for Examination Pursuant to Rule 2004* on February 26, 1990 ("Germania's 2004 Motion").

5. Germania filed its *Motion of Germania Bank to Dismiss Proceeding for "Bad Faith" Filing* on February 26, 1990 ("Germania's Motion to Dismiss").

6. After notice, the Court on March 6, 1990 commenced a consolidated final evidentiary hearing on Germania's Cash Collateral Motion, Germania's Motion for Relief, Debtor's Application, Germania's Motion to Dismiss and Germania's 2004 Motion (the "Hearing"). Evidence was adduced in support of Germania's case in chief.

7. The Hearing was continued and reset to March 29, 1990. The Hearing reconvened on March 29, 1990, and evidence was adduced upon: (a) the remainder of Germania's case in chief and Germania's cross-examination of two of Debtor's four witnesses (Jon Thomas and Steve Hogan); and (b) Debtor's case in chief by affidavits from all four of its witnesses (Thomas, Hogan, Thomas K. Walker and Howard Solomon).

8. The Hearing was continued and reset to May 3, 1990 and the automatic stay ordered continued in effect pending conclusion of the Hearing pursuant to this Court's Orders dated April 5, 1990 and April 18, 1990.

9. The Hearing reconvened on May 3, 1990, and evidence was adduced upon: (a) Germania's cross-examination of the remaining two Debtor's witnesses (Walker via live cross-examination and Solomon via deposition); (b) Germania's rebuttal; (c) Debtor's case in chief by deposition of Solomon; and (d) Debtor's surrebuttal. In addition, final arguments were made.

10. On May 3, 1990, after considering the testimony and other evidence, the demeanor and credibility of the witnesses, and the court file and record of the proceedings, the Court entered an oral summary of its findings of fact, conclusions of law, and orders on the record (the "Oral Findings"). This summary was entered at that time due to the urgency of the issues raised by the various motions and because further delay may have prejudiced the parties. The written Findings of Fact, Conclusions of Law, and Orders detailed herein incorporate and supplement the Oral Findings, and are entered pursuant to Bankruptcy Rules 9014 and 9021.

11. Germania is the holder of a Note dated May 13, 1985, pursuant to which Lindbergh Plaza, Inc. ("LPI") (an affiliate of Debtor) promised to pay to the order of Germania the aggregate principal sum of Two Million Nine Hundred Ninety Six Thousand Dollars ($2,996,000) (the "Note"),

together with interest thereon, in accordance with the terms of the Note. (Movant's Exhibit No. 1).

12. To secure payment and performance of all indebtedness and obligations under the Note, LPI and Debtor executed and delivered a Deed of Trust and Security Agreement dated May 13, 1985, filed with the Office of the St. Louis County, Missouri Recorder of Deeds on May 13, 1985 in Book 7751 at Page 1742 (the "Deed of Trust"). (Movant's Exhibit No. 2).

13. To further secure payment and performance of all indebtedness and obligations under the Note, LPI executed and delivered an Assignment of Lease Rights dated May 13, 1985, filed with the Office of the St. Louis County, Missouri Recorder of Deeds on May 13, 1985 in Book 7751 at Page 1755 (the "Assignment of Rents"). (Movant's Exhibit No. 3).

14. The Deed of Trust and the Assignment of Rents granted liens and security interests in favor of Germania in and to certain real property and the improvements thereon commonly known as the Lindbergh Plaza Shopping Center, Phase I (the "Shopping Center") and to the rents and profits therefrom.

15. LPI assigned all of its right, title, interest, obligations and responsibilities under the Note, the Deed of Trust and the Assignment of Rents to Intermark Assets Group, Inc. Retirement Trust ("Intermark") (another affiliate of Debtor) pursuant to an Assignment and Assumption Agreement dated February 21, 1986, filed with the Office of the St. Louis County, Missouri Recorder of Deeds on March 7, 1986 in Book 7878 at Page 904 (the "Assumption Agreement"). (Movant's Exhibit No. 4).

16. Debtor, LPI and/or Intermark defaulted on their payment obligations under the Note, the Deed of Trust, the Assignment of Rents and the Assumption Agreement in August, 1989 (the "Default").

17. As a result of the Default, in aid of enforcing its contractual rights, Germania noticed and scheduled a foreclosure sale of the Shopping Center for January 24, 1990 at 12:00 noon (the "Foreclosure").

18. On January 24, 1990, the day of Foreclosure, a new entity, Lindbergh Retail Property Management Corp. ("Lindbergh Retail") was incorporated in the State of Missouri.

19. Jon C. Thomas ("Thomas") was the sole general partner of Debtor up to the day of Foreclosure.

20. On January 24, 1990, the day of Foreclosure, Thomas transferred his general partnership interest in Debtor to Lindbergh Retail. Thomas received no contemporaneous consideration for this transfer.

21. At 10:03 a.m. on January 24, 1990 (the "Petition Date"), Debtor filed its Chapter 11 petition commencing this case. Germania's Foreclosure of the Shopping Center was thereby stayed pursuant to 11 U.S.C. § 362.

22. As of the commencement of this case, the Debtor's principal asset was the Shopping Center. This case is therefore being considered a "single-asset" case.

23. As of the Petition Date, Debtor had no priority wage, salary, commission, vacation, severance or sick leave creditors.

24. Debtor had no employees for at least one year immediately preceding the Petition Date.

25. As of the Petition Date, Debtor had but four unsecured creditors. The claims related to amounts owed for insurance, electricity, water and sewer service for the Shopping Center. Such claims aggregated less than $16,000. (Debtor's Schedules filed February 8, 1990.)

26. As of the Petition Date, Debtor had no personal property except for $41.48 in cash and minor tenant receivables.

27. This case essentially is a two-party dispute between Thomas, the Debtor's sole general partner immediately prior to the commencement of this case, and Germania. There are no other significant creditors or parties in interest.

28. Thomas was the signatory of the Note, the Deed of Trust, the Assignment of Rents and the Assumption Agreement which are the subject of this proceeding.

29. Thomas was the sole general partner of the Debtor up to the Petition Date, was in control of LPI prior to its corporate dissolution and is presently in control of Intermark.

30. The United States Trustee did not form a creditors' committee, due to the lack of creditor interest in serving on the Committee. (Movant's Exhibit No. 18).

31. As of the Petition Date, LPI and/or Intermark were collectively indebted to Germania pursuant to the Note, the Deed of Trust, the Assignment of Rents and the Assumption Agreement in the amount of $3,189,824. (Testimony of Steven J. Schwartz, March 6, 1990).

32. As of the Petition Date, there were outstanding real estate taxes on the Shopping Center for tax years 1987, 1988 and 1989 due and owing to the St. Louis County Department of Revenue in the approximate aggregate amount of $296,640. St. Louis County claims a lien on the Shopping Center as a result of the delinquent taxes. (Movant's Exhibit No. 5).

33. Aggregating the Germania debt and the delinquent real estate taxes results in total liens on the Shopping Center of at least $3,486,464.

34. The value of the Shopping Center as of the commencement of this case for the purpose of consideration of this motion for relief from the stay and related requests, is not greater than $3,200,000. (Movant's Exhibits No. 7 and 8).

35. Debtor's monthly obligation for 1990 real estate taxes on the Shopping Center amounts to approximately $6,333.

36. Debtor's monthly obligation for interest on the delinquent 1987–89 real estate taxes amounts to approximately $4,522.

37. The Shopping Center suffered a substantial negative cash flow for at least the last four years as follows:

     (a) 1986 – $ 91,668
     (b) 1987 –   114,712
     (c) 1988 –   110,973
     (d) 1989 –    71,547

In addition, Debtor's projections indicate that the Shopping Center will suffer negative cash flow for at least part of 1990. (Debtor's Exhibit F).

38. The Shopping Center lost two tenants (*i.e.*, Household Finance and House of Carpets, III) in the six months preceding commencement of this case, resulting in a decrease in occupied local tenant space of approximately 4,800 square feet.

39. The Shopping Center gained no new tenants during the six months preceding this case.

40. The parking lot at the Shopping Center has numerous unrepaired potholes.

41. A retaining wall at the Shopping Center has collapsed, allowing dirt and mud to fall upon the Shopping Center parking lot.

42. The Debtor has not satisfactorily accounted for tenant security deposits in the amount of $5,451.

43. Lindbergh Retail has contributed no capital to Debtor.

44. Lindbergh Retail has made no commitment to contribute any future capital to Debtor until after Debtor completes a successful reorganization and the Shopping Center achieves a positive cash flow.

45. Lindbergh Retail is a thinly-capitalized, shell corporation. Howard Solomon, executive vice president of Lindbergh Retail, testified via deposition that:

(a) He does not know who Lindbergh Retail's shareholders are, if he is a shareholder, or whether any shareholder meetings have been held;

(b) He does not know who Lindbergh Retail's directors are, if he is a director, or whether any director meetings have been held;

(c) He does not believe Lindbergh Retail has a bank account or owns any real estate, inventory, accounts receivable or office equipment;

(d) He does not know whether any corporate resolutions exist;

(e) Lindbergh Retail has no employees; and

(f) Lindbergh Retail does not have a distinct corporate headquarters or principal place of business.

46. Any factual statements contained in the Conclusions of Law shall be and shall be deemed to be additional Findings of Fact.

## CONCLUSIONS OF LAW

### A. General

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

### B. "Bad Faith" Filing

3. Germania's request to dismiss the case for "bad faith" filing presents a serious question. When presented with such a request, a court must carefully weigh the effect of such a determination. The court must consider not only the effect of such a determination on the debtor in a particular case, but also the potentially "chilling" effect such a determination might have on an entity which is sincerely considering a realistic reorganization under Chapter 11.

■ 4. It is clear that a bankruptcy petition must be filed in "good faith". *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1071–73 (5th Cir.1986); *See In re Pine Village Economic Development*, 97 B.R. 543, 543–44 (Bankr.E.D.Mo.1989). A proceeding under Chapter 11 may be dismissed for "cause" pursuant to section 1112(b) of the Bankruptcy Code if the petition was not filed in "good faith". *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir.1988).

5. Courts have analyzed several factors in determining whether a particular debtor has filed in "bad faith", including:

(a) whether the debtor owns but one primary asset, which asset is encumbered by a secured creditor's lien;

(b) whether the debtor employs an insignificant number of non-insider employees;

(c) whether the debtor generates insignificant cash flow;

(d) whether the debtor lacks available sources of income to sustain a reorganization plan and/or make adequate protection payments;

(e) whether the debtor has few unsecured creditors, with relatively small claims;

(f) whether the debtor's primary asset has been posted for foreclosure; and

(g) whether bankruptcy offers the only possibility for forestalling loss of the asset.

*Little Creek*, supra at 1072–73; *In re Brandywine Associates, Ltd.*, 85 B.R. 626, 628 (Bankr.M.D.Fla.1988) (same factors); *See also Phoenix Piccadilly*, 849 F.2d at 1394–95 (detailing similar factors).

6. In addition, courts have considered factors which evidence an intent to abuse the judicial process and the purposes of the organization provisions and, in particular, factors which evidence that the debtor filed the petition to delay or frustrate the legitimate efforts of secured creditors to enforce their contractual rights. *Phoenix Piccadilly*, supra at 1394; *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984); *In re Krilich*, 87 B.R. 178, 181 (Bankr.M.D.Fla.1988) (case dismissed for lack of "good faith" where controversy basically involved two parties, *i.e.*, debtor and secured creditor).

■ 7. Debtor's actions in this case strongly indicate the absence of a sincere intention to reorganize under Chapter 11. Virtually all of the indicia of "bad faith" set forth in the caselaw above are present in this case. This is a single-asset case. Lindbergh Retail was formed on the day of foreclosure. Thomas transferred his general partnership interest in Debtor to Lindbergh Realty on the day of foreclosure for no contemporaneous consideration. Debtor filed its petition on the day of foreclosure. The case is essentially a two-party dispute. There is an insignificant number of unsecured creditors. There are no employees to protect.

Accordingly, this Court concludes that Debtor did not file its petition in "good faith" and the case must be dismissed pursuant Section 1112(b) for cause.

## C. Section 362(d)(2)

8. Pursuant to Section 362(d)(2), on request of a party in interest and after notice and a hearing, a court shall grant relief from the automatic stay with respect to a stay of an act against property if the debtor does not have equity in such property and such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d). Accordingly, even if Debtor had filed its petition in "good faith", Germania would have been entitled to relief from the automatic stay if Debtor did not have an equity in the Shopping Center and if the Shopping Center was not necessary to an effective reorganization.

9. Pursuant to section 362(g), Germania has the burden of proof on the issue of the Debtor's equity in the Shopping Center, and the Debtor has the burden of proof on all other issues. 11 U.S.C. § 362(g).

10. Germania has established that Debtor has no equity in the Shopping Center. Germania's debt and liens are undisputed. Germania's debt of $3,189,824.00, combined with the delinquent 1987–89 real estate taxes on the Shopping Center of approximately $296,640.00 results in total liens on the Shopping Center of at least $3,486,464.00. This amount exceeds the $3,200,000.00 value of the Shopping Center. Furthermore, the Debtor has acknowledged that it has no equity in the Shopping Center. Through an Affidavit and by means of live testimony Steve Hogan, an expert witness as to financing and real estate syndication facilities, stated that the value of the real property was approximately $3,400,000.00, or at least $86,000.00 less than the amount secured by liens. (Debtor's Exhibit H).

11. The Debtor has not established that an effective reorganization is possible in this case. Debtor's recent business history indicates that its principal asset, the Shopping Center, has suffered a significant negative cash flow for at least the last four years.

The Debtor has submitted a draft proposed plan of reorganization in support of its contention that an effective reorganization can be accomplished. (Debtor's Response to Bank's Supplemental Motion For Relief From the Stay, filed April 24, 1990, Exhibit "A"). Notwithstanding the reduced debt service to Germania contemplated by the plan, the record at trial did not establish that the revenue from the Debtor's normal Shopping Center operations can realistically support normal operating expenses, including required maintenance, and also provide adequate protection of Germania's interest in the Shopping Center. Upon a review of the proposed plan, the Court has concluded that the plan is based in large part, on generalities and speculation. The plan does not realistically provide for new funding or outside financing. This Court further concludes that if the proposed plan were to be confirmed, confirmation would lead to further reorganization. Accordingly, this Court must conclude that even if Debtor had filed its petition in "good faith", Germania would be entitled to relief from the automatic stay, as it related to the Shopping Center, under section 362(d)(2).

## D. Section 362(d)(1)

12. Pursuant to section 362(d)(1), on request of a party in interest and after notice and a hearing, a court shall grant relief from the automatic stay for cause, including the lack of adequate protection of an interest in property of such party in interest. 11 U.S.C. § 362(d)(1). Accordingly, even if Debtor had filed its petition in "good faith", Germania still would have been entitled to relief from the automatic stay if its interest in the Shopping Center was not adequately protected.

13. Pursuant to section 362(g), the burden of establishing the existence of adequate protection rested on Debtor. 11 U.S.C. § 362(g).

14. Debtor failed to establish that Germania's interest in the Shopping Center is adequately protected. Current real estate taxes on the Shopping Center continue to accrue and remain unpaid, interest on the delinquent 1987–89 real estate taxes continues to accrue and remain unpaid, tenants are vacating the Shopping Center, no new tenants have executed leases for space in

the Shopping Center and the Shopping Center continues to physically and economically depreciate. Neither the Shopping Center itself nor the proposed plan adequately protect Germania's interest in the Shopping Center, and the record does not suggest any other source of adequate protection.

Accordingly, this Court must conclude that even if Debtor had filed its petition in "good faith", Germania would be entitled to relief from the automatic stay under section 362(d)(1) for lack of adequate protection.

ORDER

At Saint Louis, in this District, this 1st day of June, 1990.

Upon consideration of the record as a whole, and consistent with the Findings and Conclusions entered in this matter

IT IS ORDERED that this hearing be concluded; and

That the Movant's request for relief from the automatic stay (Motion B) to permit foreclosure of its interest in certain property as set out in the documents filed in this matter is GRANTED; and that as to this Movant, the automatic stay is terminated as of May 3, 1990; and

That the Motion on behalf of Germania Bank to dismiss this case (Motion C) as having been filed in bad faith is GRANTED; and that this Chapter 11 case is dismissed for the reasons set out in the Findings and Conclusions pursuant to 11 U.S.C. § 1112(b); and that as to all creditors and interested parties, the automatic stay is terminated; and

That the Motion of Germania Bank to limit the Debtor's use of cash collateral (Motion A) is DENIED as moot; and

That the Debtor's Application for authority to use cash collateral and for other relief is DENIED as moot; and

That the Motion of Germania Bank for an examination pursuant to Bankruptcy Rule 2004 (Motion D) is DENIED as moot.