**In re REISER FORD, INC., Debtor.**

**Bankruptcy No. 91–20204–399.**

United States Bankruptcy Court,
E.D. Missouri, N.D.

June 13, 1991.

Stuart J. Radloff, Radloff & Riske, Clayton, Mo., for Jim Lovegreen.

William L. Needler, William L. Needler and Associates, Chicago, Ill., Jackie Bailey, Marceline, Mo., for debtor.

Charles Rendlen, Hannibal, Mo., for Ford Motor Credit.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. The parties have stipulated that this is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(A) and (D).

### FACTS

This matter comes before this Court on the Motion of James Lovegreen, Lovegreen Ford–Mercury, and Auto Management, Inc. to Dismiss or in the Alternative to Shorten Exclusivity and the Motion of Debtor Reiser Ford, Inc. to Reject Executory Agreements. Debtor Reiser Ford, Inc. (the "Debtor") has operated a Ford–Mercury car dealership in Kirksville, Missouri (the "Dealership") owned by Wayne Reiser. On March 5, 1991, Debtor and James Lovegreen entered into an Asset Purchase Agreement pursuant to which Mr. Lovegreen would purchase the assets, equipment, inventory, and receivables of the Debtor for approximately $1,100,000. Pursuant to this agreement Mr. Lovegreen paid to the Debtor the initial sum of $50,-000.

At the time the parties entered into the Asset Purchase Agreement, the Debtor found itself in need of a capital restructuring loan of $250,000 in order to comply with Ford Motor Company's capitalization requirements. In addition, Ford Motor Credit Company had withdrawn its blanket

financing commitment, which resulted in a suspension of delivery from Ford Motor company of all new Ford vehicles to be sold under the Debtor's floor plan. Due to this difficult financial situation, the Debtor requested that Mr. Lovegreen assume and operate (pending the closing of the Asset Purchase Agreement) the Dealership exclusively. Mr. Lovegreen consented to this request and subsequently formed Auto Management, Inc., an entity through which he would operate the Dealership until he received final approval of his franchise agreement from Ford Motor Company and the Asset Purchase Agreement was closed, or the parties mutually agreed that the franchise agreement could not be obtained.

Since March 25, 1991, Auto Management, Inc. has been operating the Dealership exclusively, without any input or interference from the Debtor, pursuant to a Management Agreement. During this period, Auto Management, Inc. has been responsible for all wages, costs resulting from daily operation of the Dealership, all tax obligations incurred, and all utility and lease payments by the Dealership. Mr. Lovegreen testified that during this period Auto Management, Inc. had invested into the operation of the Dealership approximately $100,000 of its own funds and had paid Ford Motor Credit Corporation under its floor plan approximately $428,690.99 on new vehicles and approximately $22,171.78 on used vehicles, which constitutes almost one-half of the existing inventory at the time Auto Management, Inc. assumed control of the dealership. Regarding Ford Motor Company's approval of Mr. Lovegreen's franchise application, Jim McCullough, a representative of Ford Motor Company, testified that after resolving some of its initial concerns, Ford granted its conditional approval of the franchise on April 19, 1991, and orally notified Mr. Lovegreen of this fact three to four days later. Mr. McCullough further testified that company

policy dictated that such approval would only be given in writing upon the closing of the Asset Purchase Agreement. Thus, he stated that Mr. Lovegreen had met all requirements necessary for obtaining the Debtor's franchise save for this closing. Finally, in addition to the Asset Purchase Agreement and the Management Agreement, Lovegreen entered into a real estate sale contract with W & O, Inc., a Missouri corporation owned by Wayne and Olive Reiser, which held title to the land on which the Dealership was located. The real estate contract represented the final step in Mr. Lovegreen's contemporaneous acquisition of the Debtor.

The acquisition of the Debtor was scheduled to take place on May 3, 1991. However, on May 1, 1991, without warning or notifying Mr. Lovegreen, the Debtor filed a Chapter 11 petition and plan of reorganization. Under this plan, the Debtor proposed to reject both the Asset Purchase Agreement and the Management Agreement. In addition, the plan proposed that unsecured creditors would receive five cents on the dollar over a period of six years without interest, while Mr. Reiser would retain his stock in the Debtor. On May 29, 1991, the date of the hearing on this matter, the Debtor filed its Amendment to Plan of Reorganization, which proposed that unsecured claimants would receive 100% of their allowed claims in seven equal annual installments without interest.[1] However, as of the time of the hearing the Debtor had not filed its disclosure statement.

This case presents the Court with the following two issues:

1.  Whether the Debtor's Chapter 11 petition should be dismissed on the ground that it was filed in bad faith;

2.  If not, whether the contracts may not be rejected because they are no longer executory and/or because their rejection would not satisfy the business judgment test.

However, the Court finds such an explanation rather dubious in light of both the 95% disparity in payments to unsecured creditors between the original plan and its amendment and the timing of the filings.

---

1. At trial William L. Needler, counsel for the Debtor, stated that the prior filing of a plan of reorganization, under which unsecured creditors would receive five cents on their claims over a six-year period, was the result of a misunderstanding between him and his client.

Regarding the first issue, Mr. Lovegreen argues that the Debtor's sole reason for filing its Chapter 11 petition two days prior to the scheduled closing was simply to avoid the contracts with Mr. Lovegreen pursuant to Section 365 of the Bankruptcy Code. This fact, Mr. Lovegreen argues, coupled with the fact that there appears to be no meaningful prospect for reorganization, indicate that the Debtor's filing of its Chapter 11 petition constitutes an abuse of the bankruptcy process and a bad faith filing. In response, the Debtor states that from the outset his intention was merely to pay his creditors that which was owed to them. Addressing the second issue, Mr. Lovegreen argues that the only remaining obligation under the three contracts was their closing, which was scheduled to take place on May 3, 1991. Thus, because few, if any, obligations remain unperformed under the contracts, Mr. Lovegreen argues that they may not be deemed "executory" and therefore may not be avoided under Section 365. Alternatively, Mr. Lovegreen argues that even if deemed executory, rejection of these contracts fails to satisfy the so-called "business judgment test" in that both secured and unsecured creditors would benefit from their ratification and rejection of the contracts would result in additional substantial claims against the estate. Conversely, the Debtor argues that these contracts are executory due to the Debtor's continuing obligation not to compete, the continuing duty to provide insurance, and the continuing duty to comply with various environmental laws. Additionally, the Debtor argues that rejection of the contracts constitutes sound business judgment as would allow the Debtor to pay claimants 100% of their allowed claims.

## DISCUSSION

### I. Bad Faith

▮ While not stated explicitly in Section 1112(b) of the Bankruptcy Code, courts have held that petitions filed in bad faith may be dismissed for cause. *See, e.g., In*

*re Kerr*, 908 F.2d 400, 404 (8th Cir.1990); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir.1988). In determining whether a Chapter 11 petition was filed in bad faith, courts look to the totality of the circumstances surrounding the debtor's filing. *Carolin Corp. v. Miller*, 886 F.2d 693, 701 (4th Cir.1989). In this district, Judge Barta, following several recent decisions in other jurisdictions,[2] listed the following factors as indicative of whether a debtor has filed in bad faith:

(a) whether the debtor owns but one primary asset, which asset is encumbered by a secured creditor's lien;

(b) whether the debtor employs an insignificant number of non-insider employees;

(c) whether the debtor generates insignificant cash flow;

(d) whether the debtor lacks available sources of income to sustain a reorganization plan and/or make adequate protection payments;

(e) whether the debtor has few unsecured creditors, with relatively small claims;

(f) whether the debtor's primary asset has been posted for foreclosure; and

(g) whether bankruptcy offers the only possibility for forestalling loss of the asset.

*In re Lindbergh Plaza Assocs., L.P.*, 115 B.R. 202, 206 (Bankr.E.D.Mo.1990).

While courts may rely on factors listed in prior decisions regarding bad faith, no single factor should be determinative of the existence of bad faith as each case is to be judged on a case-by-case basis. *In re Prince Manor Apartments, Ltd.*, 104 B.R. 414, 415 (Bankr.N.D.Fla.1989). More generally, in *Carolin Corp. v. Miller*, 886 F.2d at 700–01, the Fourth Circuit held that in order to dismiss a case for want of a good faith filing, a court must find both that objectively there exists no reasonable possibility for reorganization and subjectively that the debtor filed its petition without an

---

**2.** *See Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072–73 (5th Cir.1986); *In re Brandywine Assocs., Ltd.*, 85 B.R. 626, 628 (Bankr.M.D.Fla.1988); *Phoenix Piccadilly, supra* at 1394–95.

honest intention to effectuate such a reorganization.[3]

■ This Court finds that both of the *Carolin* criteria are present in the instant case. Regarding the Debtor's ability to reorganize, in its Projection and Outlook For This Chapter 11 Debtor Under It's [sic] Plan of Reorganization May 21, 1991, the Debtor states that "[a] capital restructuring loan of $250,000.00 is anticipated to bring the operation to Ford's desired capitalization". Debtor's Exhibit 4. However, Mr. Reiser testified that he had not obtained such a financing commitment. In addition, as of March 11, 1991 Ford Motor Credit Company withdrew its blanket financing commitment for the Debtor, thereby suspending any and all financing of new vehicles to be sold under the Debtor's floor plan. Lovegreen Exhibit J. Without such a floor plan, Ford Motor Company refused to deliver any new Ford vehicles to the Debtor, which essentially transformed it into a used car dealership with very limited resources. Furthermore, the Debtor is not currently an operating business and has no employees on its payroll. Finally, both of the employees who testified stated that employee morale as a whole under the Debtor was extremely low and that neither would remain with the Debtor should it regain control of the Dealership. In short, these facts convince this Court that the Debtor enjoys no reasonable possibility of successful reorganization.

Addressing the Debtor's subjective good faith intentions, this Court notes that Mr. Reiser fully and completely relinquished operation of the Dealership to Mr. Lovegreen on March 25, 1991. Thus, the Debtor knew the exact amount of its assets and liabilities on this date, and that these figures remained unchanged due to the complete cessation of the Debtor's business operations on March 25, 1991. However, rather than filing its Chapter 11 petition on that date or shortly thereafter, the Debtor chose to file on May 1, 1991, two days before the scheduled closing of the Asset Purchase Agreement, a plan of reorganization calling for the rejection of that agreement. This Court finds the proximity of these two events anything but coincidental, and concludes that the true purpose of the Debtor's filing was merely to avail itself of the avoiding powers available under Section 365 of the Bankruptcy Code. Given this fact, this Court concludes that dismissal of the Debtor's case is indeed most appropriate. *See In re Southern California Sound Systems, Inc.,* 69 B.R. 893 (Bankr.S.D.Cal.1987).[4] In addition, the Court finds the Debtor's intentions questionable in light of its failure to file a disclosure statement, without which a plan of reorganization may not be considered for confirmation by either its creditors or

---

**3.** The Court recognizes that the Eighth Circuit has encountered the issue of dismissal for bad faith in *In re Kerr,* 908 F.2d 400 (8th Cir.1990), which involved, among other things, violation of court orders regarding failure to provide monthly financial reports and failure to account for dealings with related corporations, feigned memory losses during hearings, asset commingling, and failure to recognize and account for certain debts. In footnote 10 of its opinion, the Eighth Circuit stated:

> The Fourth Circuit requires that *where the debtor has made a full disclosure of financial information sufficient to enable the bankruptcy court to assess the debtor's condition,* the court must also find that reorganization is objectively futile before dismissing the petition. *Carolin Corp. v. Miller,* 886 F.2d at 700–02. The Eleventh Circuit permits dismissal for bad faith alone. *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1395 (11th Cir.1988). *We need not decide which approach is preferrable*

> *[sic] in light of the facts of this case,* nor was the issue briefed. (emphasis added).
> 908 F.2d at 404 n. 10.

Thus, the Eighth Circuit has indicated that *Kerr* is applicable only in cases where there has been less than full financial disclosure, while *Carolin* and *Piccadilly* apply to cases involving full disclosure. Given that full disclosure has been made in the instant case, this Court finds *Kerr* inapplicable and shall follow the reasoning and analysis of the Fourth Circuit in *Carolin.*

**4.** As further evidence of the Debtor's bad faith, Judith Wilson, who was employed as the Debtor's bookkeeper and office manager, testified that shortly after the filing of the Debtor's petition, Mr. Reiser told her that by mid-June he would be back in business and would have the $50,000 that Mr. Lovegreen deposited as earnest money. Mr. Reiser denied ever having made such a statement. While the Court notes the existence of such testimony, it does not provide the basis for the Court's finding of bad faith.

the Court. *See* 11 U.S.C. § 1125(b). This omission leads the Court to question the Debtor's sincerity, since without a disclosure statement the plan of reorganization may be changed at will.

■ Similarly, the Debtor's case must be dismissed pursuant to *Lindbergh Plaza Associates, supra,* and its predecessors, because,

1. this is a single asset case;
2. the Debtor has no employees;
3. the Debtor is not currently operating and therefore generates no cash other than past due receivables;
4. there exist no financing commitments;
5. the majority of claims against the Debtor are held by Ford Motor Credit, which is a secured creditor; and
6. Ford Motor Company appears unwilling to transact further business with the Debtor as long as Mr. Reiser is in charge of the Dealership.

Thus, this Court is certain that whether analyzed under *Carolin* or *Lindbergh Plaza,* the facts presented warrant dismissal of the Debtor's case as a bad faith filing. Accordingly, the Court holds that where one agrees, absent coercion or fraud, to sell its business to a buyer for fair consideration and, due to one's declining financial condition, voluntarily turns over such business to the buyer to operate pending closing, the filing of a Chapter 11 petition solely for the purpose of avoiding this contract constitutes bad faith.

## II. Executory Contracts

Given that this Court has deemed the Debtor's filing of its Chapter 11 petition to be in bad faith, discussion of whether the contracts were executory in nature is unnecessary. Accordingly, it is

ORDERED that Motion to Dismiss is GRANTED, and the stays of 11 U.S.C. § 362 are terminated;

IT IS FURTHER ORDERED that the Debtor's Motion to Reject Executory Agreements is DENIED AS MOOT.

IT IS FURTHER ORDERED that all pending Motions and Applications are DENIED AS MOOT.