**In the Matter of HOLIDAY ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 90–2617–C–H.**

United States Bankruptcy Court, S.D. Iowa.

March 30, 1992.

Michael P. Mallaney, Des Moines, Iowa, for debtor.

Steven P. Swanson, Burlington, Iowa, for creditor.

### ORDER ON MOTION FOR RELIEF FROM STAY AND CONFIRMATION OF PLAN

RUSSELL J. HILL, Bankruptcy Judge.

On November 12, 1991 a hearing was held on confirmation of Debtor's Chapter 11 plan and Firstar Bank's objections thereto and on Firstar's motion for relief from stay and the Debtor's objection thereto. The following attorneys appeared on behalf of their clients: Michael P. Mallaney for the Debtor; Steven P. Swanson for Firstar Bank Burlington, N.A., formerly First National Bank (hereinafter "Firstar"); and John Waters for the United States Trustee.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) and (L). The Court considers the matter fully submitted and upon review of the pleadings, arguments of counsel, and briefs submitted now enters

its findings and conclusions pursuant to Fed.R.Bankr.P. 7052.

## FINDINGS

1. On October 10, 1990, the Debtor filed a Petition under Chapter 11 of the Bankruptcy Code.

2. Firstar filed a claim in the amount of $1,568,574.67, which is secured by a first mortgage on Debtor's real estate, the hotel property. The hotel property is valued for plan purposes at $1,150,000.00.

3. The Debtor's Chapter 11 plan consists of the First Amended and Fully Substituted Plan of Reorganization, filed June 14, 1991; the first amendment thereto, filed November 13, 1991; and the second amendment thereto, filed November 20, 1991.

4. The Plan divides all allowed claims and interests into twelve classes. Firstar's objection to confirmation brings into issue the following claims and classes:

a. The impaired Class 3 claim consisting of the tax claim of the Des Moines County Treasurer in the amount of approximately $414,701.00 for pre-petition and post-petition real estate taxes on the hotel property.

b. The impaired Class 4 claim consisting of the allowed secured claim of Firstar (f/k/a First National Bank of Burlington) in the amount of $1,150,-000.00 as of October 10, 1990 secured by recorded mortgages on the hotel property.

c. The impaired Class 5 claim consisting of the allowed secured claim of any and all persons or entities who may have a claim by virtue of the Burlington Motors, Inc. Wrap Mortgage and/or the CDC, Inc. Wrap Mortgage as defined in the Plan.

d. The impaired Class 8 claim consisting of the allowed secured claim of TransAmerica Commercial Finance Corp. in the amount of $23,951.00 as of October 10, 1990 secured by a security interest dated July 19, 1985 on furniture, fixtures, and equipment.

e. The impaired Class 9 claim consisting of the allowed secured claim of Bell Atlantic Tricon Leasing in the amount of $8,377.00 as of October 10, 1990 secured by a security interest dated August 1985 on equipment.

f. The impaired Class 10 claims consisting of allowed unsecured claims including the undersecured portion of Firstar's claim (approximately $300,-000.00) (See Amendment to First Amended and Fully Substituted Plan at Reorganization ¶ 4.04).

g. The Class 11 claim consisting of the interests of holders of interests in Holiday Associates Limited Partnership. The Plan provides that some or all of the partners will provide a $100,000 infusion and that the partners shall retain their partnership interests as provided in the Plan.

5. The Plan provides for a "Priority Renovation Loan" to be made to the Debtor by a third party lender in an amount not to exceed $500,000.00 to be secured by a first and superior lien on the hotel property pursuant to 11 U.S.C. § 364(d). Said lien would be superior and prior to any mortgage liens, including Firstar's mortgage. In addition, the lien would be a first security interest in all the Debtor's personal property superior and prior to any liens or security interests retained under the Plan except for the security interest to be maintained by the Class 8 and 9 claimants.

6. The Debtor's Report of Balloting on Plan of Reorganization filed on November 13, 1991 reveals the following pertinent information:

a. The impaired Class 4 claimant, Firstar Bank, has voted not to accept the Plan.

b. The impaired Class 5 claimants, parties who claim by virtue of the Burlington Motors, Inc. Wrap Mortgage and/or the CDC, Inc. Wrap Mortgage, have voted not to accept the Plan.

c. The impaired unsecured Class 10 claimants with claims in the amount specified have voted as follows:

FOR

| CLAIMANT | AMOUNT AS SPECIFIED ON BALLOT |
|---|---|
| R. Wischmeier | $ 1,783.33 |
| James M. Livengood | 700.00 |
| Keith L. Rueckert | 12,002.82 |
| Chris Houston | unknown |
| Rich McCreg | 170.52 |
| Paul Marshall | 100.00 |
| Richard W. Sutkus | 10,304.36 |
| David L. Firzel | 516.18 |
| Ray Hodges (class not designated $208.00) | |
| Burlington Tom Sales (class not designated, schedules reflect unsecured on A–3 at $2,033.44) | |
| TOTAL | $25,573.21 |

AGAINST

| CLAIMANT | AMOUNT |
|---|---|
| National Studio (R.J. Fox) | $ unknown |
| Robert School | 854.05 |
| Art Melcher | 697.25 |
| First National Bank (Firstar) | 2,450.00 |
| TOTAL | $ 4,001.30 |

7. Article IV Provision for Payment of Claims paragraph 4.04 was amended to provide that the undersecured portion of Firstar's claim (approximately $300,000) shall be treated as a Class 10 claim. (Amendment to First Amended and Fully Substituted Plan of Reorganization filed November 13, 1991).

8. Firstar Bank, f/k/a First National Bank, filed a motion for relief from stay July 24, 1991. As the basis for its motion, Firstar alleges that Debtor has no equity in the real estate for which Firstar holds the mortgage; that Firstar's interest in the property is not adequately protected due to deterioration/depreciation of the property and accruing real estate taxes, which represent a priority lien on the real estate; that there is little possibility for acceptance of a reorganization; and that the Debtor did not file its petition in good faith.

9. Firstar also objects to Debtor's Plan on the following grounds:

a. Class 8 and 9 claims should not be treated as secured claims because the respective creditors' interests are not on file with the Iowa Secretary of State and no UCC continuation statement was filed by those creditors pursuant to Iowa Code § 554.9403(2). Thus, the claims of classes 8 and 9 should be treated as unsecured.

b. Confirmation of the Plan is likely to be followed by a liquidation; that is, the Plan is not feasible.

c. The unsecured creditor's class, Class 10, should be found to have voted not to accept the Plan; with the result that the Plan cannot be confirmed. The undersecured portion of Class 4 claims and all of Class 5 claims should be treated as Class 10 unsecured claims. Since they voted to reject the Plan, Class 10 has essentially rejected the Plan.

d. The Plan violates the absolute priority rule, 11 U.S.C. § 1129(b)(2)(B)(ii), because unsecured creditors would receive only 25% under the Plan while Class 11 claims may retain their partnership interest.

e. The Plan is not fair and equitable toward Firstar, in violation of

§ 1129(b), in that the Plan proposes to pay 12% interest on the proposed Renovation Loan while paying Firstar only 10% on its claim, despite the greater risk shouldered by Firstar. Moreover, Debtor is speculating with Firstar's money whereby any gain will go to the partners, while losses will fall on Firstar.

## DISCUSSION

Debtor moves for confirmation of its Plan of reorganization and Firstar resists and moves for relief from stay. Firstar's arguments on the treatment of Class 8 and 9 claims are not here addressed. For the reasons given below, the Court denies confirmation of the Plan and grants Firstar's motion for relief from stay.

### I. Confirmation

■ Courts may confirm a plan under § 1129 only if all the requirements of this section are met. One of the requirements of § 1129(a) is that each class of claims or interests either accepts the plan or will not be impaired by the plan. If an impaired class does not accept the plan, the plan may still be confirmed pursuant to § 1129(b); but it still must also comply with the applicable provisions of § 1129(a). *In re Johns–Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y.1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, 843 F.2d 636 (2d Cir.1988).

■ In the present case three impaired classes have not accepted the Plan. The Debtor's Report of Balloting on Plan indicates Classes 4 and 5 have rejected the Plan. The report does not, however, state whether Class 10, unsecured creditors, has accepted the Plan, though Debtor's post-hearing brief contends Class 10 has. Under the tally presented in the report, ten claimants with $25,577.21 worth of claims have accepted the Plan and four claimants with $4,001.30 have not accepted the Plan.

Thus, it would appear that at least two-thirds in amount and more than one-half in number of the unsecured creditors have accepted the Plan. *See* 11 U.S.C. § 1126(c). The report and Firstar's ballot, however, appear to be mistaken in that Firstar's (denoted as First National Bank's) claim is stated as being $2,450.00 when in fact Firstar's unsecured claim is something over $300,000 because its claim exceeds the value of its collateral. *See also* Amendment to First Amended and Fully Substituted Plan of Reorganization (filed 11/13/91) at ¶ 4.04 (providing unsecured portion of Bank's claim shall be treated as Class 10 claim). This court finds the unsecured creditors, Class 10, have rejected the Plan because less than two-thirds in amount of the class ($\frac{2}{3}$ of $327,128.51 = 218,085.67$) have accepted the Plan.[1] The Debtor, therefore, can confirm its Plan only if it meets the requirements of § 1129(b)(2)(B) (unsecured claims) as well as those of § 1129(b)(2)(A) (secured claims).

Debtor's Plan may not be confirmed for two reasons. First, the Plan is not fair and equitable with respect to the Class 10 unsecured claims in that it violates the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B). Second, confirmation of the Plan is likely to be followed by liquidation or the need for further financial reorganization contrary to 11 U.S.C. § 1129(a)(11).

### A. *Fair and Equitable*

■ The Plan is not fair and equitable with respect to the Class 10 unsecured claims in that the Holiday Associates partners propose under the Plan to retain their partnership interests in the reorganized partnership without providing full satisfaction of allowed unsecured claims. Thus, the plan violates the absolute priority rule as codified in 11 U.S.C. § 1129(b). Debtor argues that the rule permits the limited partners to retain their interest by their

---

1. There is a lack of clarity by Debtor on this point. Debtor's brief takes the position that the November 13 report of balloting indicates Class 10 unsecured claimants have voted as a class to accept the Plan. (Debtor's Brief in Support of Confirmation of Plan of Reorganization at 13). However, on November 13 Debtor also filed its Amendment to First Amended Plan, which provides Firstar's undersecured portion of its claim (approximately $300,000.00) shall be treated as a Class 10 claim. Accordingly, Debtor cannot continue to maintain that Class 10 has accepted as Firstar's impaired unsecured interest has increased from $2,450.00 to $302,450.00.

infusion of $100,000 new capital. The extent of Debtor's argument is to state that the requirements of the "new value exception" are satisfied and to cite some recent cases, which find or reject the exception. (Debtor's corrected Brief in Support of Confirmation of Plan of Reorganization filed 12/20/91 at 14). This paucity of argument makes the court's task more difficult, especially as the new value exception is one of the most unsettled of recent bankruptcy law issues. *Compare Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III)*, 948 F.2d 134, 142 (5th Cir.1991), *partially withdrawn*, (per curiam) (withdrawing and deleting the prior opinion's discussion of the new value exception to the absolute priority rule) *and Kham & Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1360 (7th Cir.1990) *with In re U.S. Truck Co.*, 800 F.2d 581, 587–88 (6th Cir.1986); *Anderson v. Farm Credit Bank (In re Anderson)*, 913 F.2d 530, 532 (8th Cir.1990); *In re Blankemeyer*, 861 F.2d 192, 194 (8th Cir.1988) *and Carson Nugget, Inc. v. Green (In re Green)*, 98 B.R. 981, 982 (9th Cir.B.A.P.1989).

On its face, the Code does not allow the equity owners of a bankrupt enterprise, or any junior creditors, to retain or obtain ownership and control of the debtor without the appropriate consent of senior creditors. This "absolute priority rule" is codified at 11 U.S.C. § 1129(b)(2)(B) as a definition of the "fair and equitable" standard for plan confirmation. Thus, the holder of any claim or interest that is junior to the claims of an unsecured class may not receive any property on account of its claim or interest until the senior claims are repaid in full.[2] The purpose of § 1129(b) is to stratify creditor and equity interests so

that a cramdown, or nonconsensual, plan will not redistribute a dissenting creditor's property rights to those with a junior right or interest in the debtor. Such a result would be neither fair nor equitable.

Even assuming without deciding, however, that there is a new value exception, Debtor's Plan may not be confirmed because even partners who refuse to make additional capital contributions will have their interest in the Debtor diminished but not terminated. Article V of the Plan relates the commitment interest holders have made to the reorganization. $100,000 would be contributed. For the interest holders that do not contribute to the $100,000 capitalization, the Plan proposes a corresponding reduction in their respective partnership interest. Thus, the interest holders retain equity even without contributing new value contrary to any hypothetical new value exception to the absolute priority rule.

### B. *Feasibility*

 The Code provides a plan cannot be confirmed unless confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11) (1988). To be feasible, a Chapter 11 plan must offer a reasonable prospect of success and be workable. *United Properties, Inc. v. Emporium Dep't Stores*, 379 F.2d 55, 64 (8th Cir.1967); *In re E.I. Parks No. 1 Ltd. Partnership*, 122 B.R. 549, 558 (Bankr. W.D.Ark.1990). Success need not be guaranteed. *In re E.I. Parks*, 122 B.R. at 558. The test is whether the provisions of the

---

**2.** 11 U.S.C. § 1129(b)(2)(B)(ii) provides in pertinent part:

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

. . . . .

(B) With respect to a class of unsecured claims—

. . . . .

(ii) the holder of any claim or interest that is junior to the claims of such class will not

receive or retain under the plan on account of such junior claim or interest any property.

plan that are to be accomplished after confirmation can be done as a practical matter under the facts. *Id.* at 558–59 (citing *Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson),* 767 F.2d 417, 420 (8th Cir. 1985)). Pertinent factors include the business' earning power, the sufficiency of the capital structure, economic conditions, managerial efficiency, and whether the same management will continue to operate the business. *Id.* at 559.

The Debtor has failed to show that the plan is feasible. First, the Debtor's earning is dependent on obtaining a Ramada franchise. To obtain the franchise, Ramada would require the Debtor to upgrade and renovate the hotel property at an estimated cost of $588,000. Without offering his own estimates or an explanation of cost-cutting measures, the Debtor's representative testified the Debtor could get by with $500,000 in renovations. The Debtor's Disclosure Statement indicates that the partnership has previously lost a Days Inn franchise in 1990 for failure to properly renovate the hotel. (First Amended and Fully Substituted Disclosure Statement at 10). Moreover, the Debtor has failed to show it has or can obtain the $500,000 it alleges would be sufficient for the renovation necessary for obtaining the Ramada franchise. The testimony of Mr. Scott Darby indicated that the letters of intent to commit funds (Debtor's exhibits 4–5) did not in fact constitute firm commitments or a guarantee funds would be made available.

The Debtor attempted to show the plan is feasible with the report and testimony of Mr. Patrick K. Madigan. The report was outdated and based on assumptions without basis in actual fact. For example, Madigan's projections were based on the hotel property having been extensively and completely renovated to the satisfaction of Ramada International by December 31, 1991. By Madigan's own testimony at the confirmation hearing this was unlikely to occur (and is at this date impossible); and, as Madigan further testified, the estimates would now need to be set back by about a year. Madigan's report was prepared on or before May 3, 1991 and has not been updated. Present economic conditions in Burlington also may have changed including the frequency of steamboat gambling dockings or competition from other hotel/motels. Firstar alleges that they have.

Based on the foregoing factors, the court is not convinced that as a practical matter the Plan is feasible and would not likely be followed by liquidation or the need for further financial reorganization.

## II. Relief from Stay

■ Firstar moves for relief from stay pursuant to 11 U.S.C. § 362. Because it is not disputed that the Debtor has no equity in the property, the burden is on the Debtor to show adequate protection and that the property at issue is necessary to an effective reorganization. *Anderson v. Farm Credit Bank (In re Anderson),* 913 F.2d 530, 532 (8th Cir.1990). This requires a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; and that the reorganization is in prospect. *United Sav. Ass'n v. Timbers of Inwood,* 484 U.S. 365, 375, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988).

■ Before addressing whether the Debtor met its burden, the court will address Firstar's argument that Debtor's bankruptcy filing lacked good faith and therefore constitutes cause for relief from the automatic stay. That a debtor fails to make payments, has financial difficulties over an extended period of time, files for bankruptcy relief on the eve of state court action, and does not reach agreement with a creditor on adequate protection payments are circumstances common in bankruptcy cases. These circumstances do not by themselves constitute bad faith conduct as Firstar alleges. Whether a bankruptcy filing is made in good faith depends on the debtor's financial condition, motives and local financial realities as a whole. *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev.),* 779 F.2d 1068, 1072–73 (5th Cir.1986); *In re Reiser Ford, Inc.,* 128 B.R. 234, 237 (Bankr.E.D.Mo.1991). In this case the Debtor is a functioning hotel business with

cash flow, employees, and a variety of creditors besides Firstar. The Debtor was not created on the eve of foreclosure to isolate the insolvent property and its creditors. The Debtor may have had a hope of rehabilitation. *See Little Creek,* 779 F.2d at 1072–73; *Reiser Ford,* 128 B.R. at 237. Thus, the court declines to find the Debtor's filing lacked good faith.

■ Debtor has failed to show that an effective reorganization is in prospect. Debtor concedes that the Plan's success is contingent on acquisition of the Ramada franchise. Acquisition of the Ramada franchise is contingent on acquisition and approval of a $500,000 super priority loan for renovations. Because Ramada has conditioned the granting of a franchise on $588,000 worth of renovations, it also appears the Plan is contingent on the proposed $100,000 capital infusion by the partners. Finally, all of the projections Debtor relies upon are outdated and need to be set back by one year according to the testimony of Debtor's own expert. None of these contingencies have been or appear likely to be met. The Debtor failed to produce a lender with enough confidence in the Debtor to commit to the super priority loan; and the capital infusion as proposed violates the absolute priority rule and the new value exception Debtor advocates. Thus, the renovations cannot be made, the franchise cannot be acquired, nor the outdated projections achieved.

Debtor has had over a year to propose and confirm a feasible plan. An effective plan is not in prospect. Therefore, the Court grants Firstar the relief from stay it requests pursuant to § 362(d).

### ORDER

IT IS THEREFORE ORDERED Debtor's Plan shall not be confirmed because it fails to meet the requirements of 11 U.S.C. § 1129(a)(11) and (b)(2).

IT IS FURTHER ORDERED that Firstar's motion for relief from stay pursuant to 11 U.S.C. § 362(d) is granted.