**In re LITTLE CREEK DEVELOPMENT COMPANY, Debtor.**

**Bankruptcy No. 485–40773.**

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

Oct. 31, 1985.

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for movant Com. Mortgage Corp.

John T. Lynch, IV and David L. Whaley, Adams, Meyer, Addison & Associates, Hurst, Tex., for debtor.

## MEMORANDUM OPINION REGARDING MOTION TO LIFT STAY OF COMMONWEALTH MORTGAGE COMPANY

MICHAEL A. McCONNELL, Bankruptcy Judge.

On June 4, 1985, LITTLE CREEK DEVELOPMENT COMPANY ("the Debtor" or "Little Creek") filed its voluntary petition in this Court seeking relief under Chapter 11 of the Bankruptcy Code. Its primary secured creditor, COMMONWEALTH MORTGAGE CORPORATION ("Commonwealth") promptly filed a motion seeking relief from the automatic stay and a hearing was held on the motion within the time period specified in Section 362 of the Bankruptcy Code.

Based upon certain admissions of counsel, the Court lifted the stay "for cause" under Section 362(d)(1). An order was entered on August 28, 1985 lifting the stay which the Debtor immediately appealed to

the District Court. The Debtor then sought a stay of the order pending appeal which was granted in part by this Court.

The purpose of this Memorandum Opinion is to supplement the Court's order lifting the stay and to set forth its findings of fact and conclusions of law pursuant to Rules 7052 and 9014 of the Bankruptcy Rules.

### FINDINGS OF FACT

1. On March 30, 1984, Little Creek executed and delivered to Commonwealth two promissory notes: the first evidenced a $4,584,600.00 construction loan from Commonwealth to Little Creek ("the Construction Loan Note"); the second evidenced a $304,300.00 land acquisition loan from Commonwealth to the Debtor ("the Land Loan Note").

2. The Construction Loan Note was secured, *inter alia*, by a deed of trust dated March 30, 1984 upon 4.42938 acres of land in Tarrant County, Texas ("the Construction Loan Deed of Trust").

3. The Land Loan Note was secured, *inter alia*, by a deed of trust dated March 30, 1984, covering a tract of 3.5218 acres of land in Tarrant County, Texas ("the Land Loan Deed of Trust"). The two tracts of land referred to herein shall be referred to collectively as "the Property".

4. Commonwealth's distributions of the Construction Loan proceeds were also governed by a Construction Loan Agreement contemporaneously executed between Commonwealth and Little Creek. By the terms of the Construction Loan Note, the Land Loan Note, the Construction Loan Deed of Trust and the Land Loan Deed of Trust, any default under the Construction Loan Agreement constituted an event of default under the Notes and Deeds of Trust.

5. On January 25, 1985, Commonwealth, through its attorneys, gave the Debtor notice of default under the Construction Loan Agreement and notified the Debtor of Commonwealth's intent to accel-erate the indebtedness under the Construction Loan Note and Land Loan Note. The alleged defaults concerned the failure of the Debtor to obtain a required building permit and a replacement guarantor satisfactory to Commonwealth for a deceased guarantor.

6. Before Commonwealth could foreclose under the powers of sale contained in the deeds of trust, Little Creek commenced an action in the 96th Judicial District Court of Tarrant County, Texas, styled "LITTLE CREEK DEVELOPMENT COMPANY V. COMMONWEALTH MORTGAGE COMPANY", et al, Cause No. 96–88574–85 seeking an injunction against foreclosure of the Little Creek deeds of trust. Little Creek also sought an award of damages based on allegations of breach of contract, breach of certain common law duties, fraud, and violations of the Texas Deceptive Trade Practices-Consumer Protection Act. Contemporaneously with the commencement of the suit, Little Creek obtained a temporary restraining order restraining Commonwealth from foreclosing its deeds of trust.

7. Following a preliminary injunction hearing, the 96th District Court entered a preliminary injunction on May 7, 1985 enjoining foreclosure during the pendency of the case provided Little Creek posted a bond with the clerk in the amount of $1,250,000.00. Little Creek, however, refused to supply the bond and elected instead to file this Chapter 11 proceeding on June 4th on the eve of foreclosure.

8. Commonwealth then filed its motion for relief from stay to allow it to foreclose on the deeds of trust which it held on the Little Creek property.

9. In its written response to the motion to lift stay, Little Creek attempted to incorporate into the stay litigation all of the allegations and causes of action raised in the pending state court proceeding. Commonwealth filed a motion to strike these defenses, and the Court, in granting the motion to strike made the following comments in its letter opinion:

"In this case, it is obvious that trial of the complex matters raised by Debtor's

affirmative defenses and state court claims would involve a multitude of issues not related to modification of the stay. For example, Debtor's breach of contract and various statutory and common law fraud claims in no way involve whether the Debtor has any equity in the disputed property or whether the property is necessary for Debtor's reorganization; therefore in the opinion of this Court, they are improperly raised and should be stricken. Additionally, it is apparent that trial of the Debtor's state court claims and affirmative defenses would unduly protract and complicate the stay litigation.

The Debtor will not be greatly prejudiced if these affirmative defenses and state court claims are stricken. The Debtor may pursue its state court claims and it will retain an action for damages as an asset of the estate. If its claims of treble and punitive damages are sustained, the Debtor will be adequately compensated. Furthermore, the Debtor may exercise its state law rights in the event the stay is lifted to file a *lis pendens* notice and thereby seek to prevent Commonwealth's disposal of the disputed property or to seek injunctive relief through the mechanism of the state court lawsuit. At the trial of the request for final relief from the automatic stay, the Court can only grant relief from the automatic stay. The Bankruptcy Court does not transfer ownership of the property. In the event the stay is lifted, Commonwealth will still have to proceed with its private foreclosure remedies under Texas law subject to the jurisdiction of the state court if exercised.

Accordingly, it is the opinion of this Court that the affirmative defenses should not be litigated at the time of the final hearing on relief from the automatic stay sought by Commonwealth. The issues and evidence at trial will be limited to the traditional statutory tests set forth in Section 362(d) of the Bankruptcy Code. Obviously the discovery for the trial will also be limited to the same issues."

10. The final hearing on Commonwealth's motion commenced on August 1, 1985. Evidence at the hearing disclosed that the unpaid balance of principal and interest on the indebtedness secured by the Little Creek deeds of trust was $1,400,-806.14 as of August 2, 1985. Evidence produced by Commonwealth at the hearing further showed that the fair market value of the property covered by the Little Creek deeds of trust, however, was only $775,-000.00 as of July 1, 1985.

11. The final hearing on Commonwealth's Motion for Relief from Stay had to be recessed before completion of the evidence, and resumed on August 26, 1985. At the outset of the hearing, the Court heard arguments from counsel regarding Little Creek's objection to the Court's order striking certain defenses to the motion for relief from stay. During these arguments, counsel for Little Creek repeatedly asserted that the Debtor's bankruptcy proceeding was commenced to escape the consequences of Little Creek's refusal to file the $1,250,000.00 bond required by the temporary injunction in Cause No. 96–88574.

12. In his opening remarks, Mr. Lynch, counsel for the Debtor, stated:

"The Debtor in this case has already sought and obtained an injunction in State Court against the foreclosure sale and was unable to continue that by virtue of an increasing bond requirement. And that was the reason it precipitated this filing in this Court". (Transcript of August 26, 1985 hearing, page 5, lines 2–6.)

Mr. Whaley, co-counsel for the Debtor, then articulated the Debtor's position more precisely:

"*Now, if we were able to carry forward with that type of bond, we'd still be in State Court.* The reason we're in Bankruptcy Court is because the sole asset of

the corporation is jeopardize[d] by the fact that the lenders committed some acts, which we've alleged to this court. The same reasoning by going to State Court for our remedy—going to State Court for our remedy isn't applicable here. *Because State Court has granted our remedy, we're not able to bond the amount in State Court and that's why we're in Bankruptcy Court seeking our remedy here.* (emphasis added). (Tr. pp. 7–8, Lines 25, 1–9.)

13. From the above admissions of counsel, the Court finds as a matter of fact and law that the Debtor commenced these proceedings in "bad faith". It is an impermissible and unjustifiable imposition on already strained judicial time and resources to use the automatic stay as a replacement for an injunction conditioned upon a bond the Debtor could not or would not provide. The admissions of counsel coupled with Little Creek's prior attempts to incorporate the state court causes of action into the stay litigation make it readily apparent that Little Creek simply wanted to transfer the litigation from state court to bankruptcy court where it could have an automatic injunction and escape the state court's bond requirement.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and parties to this litigation. The motion for relief from stay is a "core proceeding" as defined in 28 U.S. § 157(b)(2)(G).

2. Although Chapter 11 does not by its literal terms require that a petition be filed in "good faith", courts have implied such a provision to prevent abuse of the bankruptcy laws and to protect jurisdictional integrity. A good faith requirement protects the jurisdictional integrity of the bankruptcy courts which sit in equity and therefore demand that a party seeking relief enter with clean hands. *Furness v.*

*Lilienfield,* 35 B.R. 1006, 1011 (D. Maryland 1983).

3. This Court has not only the authority but also the obligation to inquire *sua sponte* into the good faith of Little Creek in filing its Chapter 11 petition. *Furness v. Lilienfield, supra* at 1010. In doing so, the Court prevents abuse of the bankruptcy laws and protects its jurisdiction from those who seek to invoke it for other than reorganizational purposes. *Id.* at 1011. *In Re Talladega Steaks, Inc.,* 50 B.R. 42, 13 B.C.D. 286 (N.D.Ala.1985).

4. If the Court finds that the debtor did not file its Chapter 11 petition in good faith, it may either dismiss the case or lift the stay "for cause". *Furness v. Lilienfield, Id.; In Re Lotus Investments, Inc.,* 16 B.R. 592, 595–5960 (Bkrtcy.S.D.Fla. 1981); *In Re Talladega Steaks, Inc., Id.; In Re Scott,* 42 B.R. 35, 38 (D.Or.1984); *In Re Victory Construction Co., Inc.,* 9 B.R. 549, 560 (Bankr.C.D.Cal.1981); *In Re Corporation Deja Vu,* 34 B.R. 845 (Bankr.D. Md.1983); *Matter of Winn,* 43 B.R. 25 (Bankr.M.D.Fla.1984); *In Matter of Jack Hemp Associates,* 20 B.R. 412 (Bankr.S.D. N.Y.1982).

5. The courts have consistently held that commencing a Chapter 11 proceeding for the purpose of obtaining relief which the party has been unable to obtain in a state court judicial proceeding constitutes bad faith. As succinctly stated by District Judge Joseph Young in *Furness v. Lilienfield, supra* at 1013, "the Bankruptcy provisions are intended to benefit those in genuine financial distress. They are not intended to be used as a mechanism to orchestrate pending litigation".

6. Chapter 11 is not a device to escape from proceedings in other courts or permit further appeals from valid state court proceedings. *Southern Land Title Corporation v. Mitchell,* 375 F.2d 874, 877 (5th Cir.1967); *In Re Setzer,* 47 B.R. 340, 345 (Bankr.E.D.N.Y.1985); *In Re Pagoda International, Inc.,* 26 B.R. 18, 21 (Bankr. D.Md.1982).

7. The facts of the instant case are strikingly similar to the facts set forth in *In Re Wally Findlay Galleries*, 36 B.R. 849 (Bankr.S.D.N.Y.1984). In that case, Judge Edward Ryan found that it was an impermissible use of Chapter 11 to use the bankruptcy court to relitigate certain summary judgments awarded in state court. In rejecting the debtor's attempt to use the bankruptcy automatic stay as a "free" supersedeas bond, Judge Ryan found as follows:

"It *is clear that the debtor did not file its petition to reorganize, but rather as a litigating tactic in its dispute with International and Realty.* The petition was filed the same day that judgments on the promissory notes were entered in the state court. *See, In Re Ripples of Clearview, Inc.,* 26 B.R. 453, 455 (Bankr. E.D.N.Y.1983). Neither the debtor, the Borynack Corporation, nor Mr. Borynack has sufficient assets to post a bond in order to stay these judgments pending appeal. The debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating. *This court should not, and will not, act as a substitute for a supersedeas bond of state court proceedings.*" *Id.* at 851. (emphasis added).

8. This Court is in complete agreement with the reasoning of Judge Ryan. Little Creek is, in effect, invoking the automatic stay through this Court for the purpose of acting as a "free" injunctive bond. This tactic is impermissible and will not be tolerated. Since this Court has a responsibility not only to protect its jurisdiction through an examination of the Debtor's good faith in filing its petition, but also to prevent the Chapter 11 proceeding from serving an impermissible purpose, it concludes, of its own motion, that Little Creek's petition was not filed in good faith and lifts the stay "for cause". *In Re Greg-*

*ory,* 39 B.R. 405, 407 n. 1 (Bankr.Tenn. 1984); *In Re Victory Construction Co., supra; In Re Lotus Investments, Inc., supra.*

9. The Clerk is directed to file this Memorandum Opinion and to distribute copies to the attorneys of record listed below.*

---

\* The prior Memorandum Opinion of this Court, dated September 16, 1985, regarding motion to lift stay of Commonwealth Mortgage Company is withdrawn and replaced by this Opinion in order to correct minor citation errors, etc.