**In re Winfred J. SMITH, Betty Smith, Debtors.**

**Bankruptcy No. 18500333.**

United States Bankruptcy Court, W.D. Kentucky.

March 7, 1986.

Philip Huddleston, Bowling Green, Ky., for debtor.

Charles English, Bowling Green, Ky., for Robert & Mary Stroop/Creditors.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

■ Good faith in Chapter 11 is again an issue before this court. Here we consider whether it is permissible for a financially sound debtor to invoke Chapter 11 to avoid posting a supersedeas bond in pending state court litigation. We conclude that it is not, and order this case dismissed.

The recent financial history of the Scottish Inn Motel in Bowling Green, Kentucky, under the management of the debtors W.J. and Betty B. Smith, will make the reader wonder whether he has opened the pages of an opinion from a Chapter 11 court. It is generally as follows:

The Smiths bought a distressed motel property from Robert and Mary Stroop for approximately $1 million in March, 1981. Terms of the purchase were the assumption of a $783,000 first mortgage to Nashville City Bank and Trust Company and the execution of secured and unsecured installment notes in favor of the Stroops for the balance of the purchase price.

For the year 1981 the motel showed a net operating loss of $3,771, but treating depreciation reserves as available cash, the business had a positive cash flow of $46,-140. Giving that same treatment to depreciation, the motel produced net operating profits of $120,712 in 1982, $171,910 in 1983, and $260,177 in 1984. During a 60-day peak season in 1985 alone, the operation enjoyed a net income of $81,000. Smith has spent or committed $600,000 on improvements to the motel, and has invested surplus profits in a $300,000 farm, cattle and farm equipment, oil wells, and—a minor but incendiary point in these proceedings—a new Corvette as a gift to his son. When he filed his petition Smith reported $68,000 cash on hand, and at the time of the good-faith hearing he was holding $27,-000 in cashiers checks. Payroll, taxes and trade creditors are all current. The rejuvenated motel property is now worth $2.3 million.

The only dark chapter in this striking success story dates back to the acquisition of the motel in 1981. A dispute developed early between Smith and Stroop as to the condition of the premises. After making a single payment, Smith contended that structural and other hidden defects had rendered fraudulent Stroop's representations about the property, and he stopped paying Stroop on the notes. Stroop sued Smith in Warren Circuit Court. Smith counterclaimed for fraud. Pursuant to a jury verdict, judgment was entered against Smith which, with current interest, approximates $275,000. The jury rejected Smith's counterclaim of fraud. When attachment proceedings were commenced Smith filed a Chapter 11 petition rather than post the supersedeas bond required to prevent attachment during his appeal from the judgment.

It is obvious from the financial history that during the intervening five years Smith could have paid Stroop the entire amount owed him while litigating their differences. But Stroop has received only $15,000—at the time he closed the sale—and himself faces bankruptcy because of the continuing default. At the good-faith hearing and before, settlement of the dispute was recommended to these parties in the strongest possible terms. None has been reached. Our opinion follows.

\*  \*  \*  \*  \*  \*

■ Good faith is an implicit requirement for Chapter 11 relief. We wrote long on the subject in *In re Khan,* 34 B.R. 574 (Bkrtcy.W.D.Ky.1983) and need not repeat that reasoning here. An issue only tangentially discussed in *Khan,*[1] and the one precisely raised here, is whether, as a general principle, a Chapter 11 filing may be used as the functional equivalent of a supersedeas bond.

The cases go both ways. Obviously the *A.H. Robins* and *Mansville*-type Chapter 11 proceedings[2] must be distinguished away if we are to reach our stated result. That we may easily do, on the basis of their sheer magnitude. There is a gross distinction between a solvent sole proprietor with a single judgment creditor, on the one hand, and on the other a multinational manufacturer faced with mass tort litigation from a sizeable segment of the consumer public. The latter type of case raises questions of the wholesale redistribution of loss which rise to the level of public policy, with the bankruptcy court acting only as a sort of intermediate-term claims bank, preserving actual and undiscovered product liability claims until they can be found, asserted and resolved through either the courts or other institutions of government.

Cases of lesser magnitude may be found which endorse the use of Chapter 11 to circumvent state law requirements of appeal bonds, the most frequently cited of which is *In re Alton Telegraph Printing Co.,* 14 B.R. 238 (Bkrtcy.S.D.Ill.1981). That case involved an Illinois newspaper unable to post a bond to protect it against a $9 million libel judgment. In permitting the Chapter 11 proceeding to go forward, the bankruptcy court commented with an apparently straight face that the petitioner was in good faith because it "has filed a plan of reorganization ... has attended all of the meetings and hearings, and has generally been cooperative with the Court."[3] No less should be demonstrated by each and every petitioner, we submit, although we are constrained to observe that even mewling compliance may be used to conceal other, less admirable, motives.

The *Alton Telegraph* court further rationalized that (a) the Chapter 11 debtor intended to prosecute its appeal notwithstanding its bankruptcy court protection, and (b) filed the petition "in order to preserve its status as an ongoing concern and protect its employees and its creditors while the claims against it are litigated."[4] The latter statement is actually one of result rather than motive, and the former reasoning simply ignores that the predominant creditor's state-law right to financial protection during the pending appeal had been effectively destroyed by the use of Chapter 11. In our judgment, the *Alton Telegraph* reasoning is spongy at best, demonstrates a blithe disregard for the state judicial process, and is to be avoided.

Far preferable is the rule of such cases as *In re Wally Findlay Galleries, Inc.,* a 1984 New York decision in which Bankruptcy Judge Ryan wrote, much to our editorial envy, that:

> It is clear that the debtor did not file its petition to reorganize, but rather as a litigating tactic in its dispute with (the judgment creditor). Neither the debtor (corporation nor its principal) has sufficient assets to post a bond in order to stay these judgments pending appeal. The debtor filed its petition herein to

---

**1.** The avoidance of a supersedeas bond was only one facet of the *Kahn* case, and we disposed of the case on other grounds. *Alton Telegraph* and its progeny were cited by Khan's counsel, and the court commented that "we do not agree with those opinions but do not find it necessary here to commence an argument with them." 34 B.R. at 579.

**2.** The Mansville asbestosis cases are still in bankruptcy court after more than two years. *See In re Mansville Corp.,* 36 B.R. 727 (Bkrtcy.S. D.N.Y.1984), *app. den.* 39 B.R. 234 (S.D.N.Y.

1984). In the A.H. Robins case, involving the maker of the defective "Dalkon Shield" intrauterine contraceptive device, the good faith question is raised in numerous motions to dismiss which are pending at this writing. *In re A.H. Robins Inc.,* Case No. 85–01307–R, filed Aug. 21, 1985 (E.D.Va.1985).

**3.** 14 B.R. at 241.

**4.** Id.

avoid the consequences of adverse state court decisions while it continues litigating. This court should not, and will not, act as a substitute for a supersedeas bond of state court proceedings.[5]

To the same effect is *In re Little Creek Development Co.*, 54 B.R. 510 (Bkrtcy.N.D. Tex.1985), where the Section 362 automatic stay was lifted "for cause" where the debtor had invoked Chapter 11 rather than post an appeal bond. The bankruptcy court commented that "It is an impermissible and unjustifiable imposition on already strained judicial time and resources to use the automatic stay as a replacement for an injunction conditioned upon a bond which the Debtor could not or would not provide.". The court concluded, without a full hearing on the good-faith issue, that the petitioner "simply wanted to transfer the litigation from state court to bankruptcy court where it could have an automatic injunction and escape the state court's bond requirement."[6] On appeal, the Fifth Circuit remanded for a full hearing but gave the bankruptcy court strong clues that it would affirm a finding of bad faith.[7]

■ Generally speaking, the supersedeas bond is a recognition of the probability of affirmance on appeal of lower court judgments, and acts as a disincentive to abuse of the legal process through frivolous or capricious appeals.[8] The bond protects judgment creditors by providing "a means of compensating an appellee upon an affirmance for the damages suffered between the entry of judgment and its affirm-

ance which ... would not have been suffered but for the appeal."[9]

■ State law requirements of supersedeas bonds are not to be lightly ignored. The right to appeal is not an absolute one, having neither common law nor federal constitutional basis,[10] but is a creation of statute, and its exercise should be strictly in accordance with the controlling state law.[11] Due regard for principles of federalism requires no less than our unrelenting respect for the controlling state law on supersedeas bonds as expressed in Kentucky Rule of Civil Procedure 73.04.

To the extent that these proceedings reveal not only the intentional dishonor of a personal obligation but conscious avoidance of applicable state law, the Smith matter represents an abuse of process, state and federal. Concerning the former we are without power to act, but upon the latter—specifically upon the use of federal bankruptcy law to defy legitimate state ends—we may act to close the federal door, which we now do. By separate order this case will stand dismissed with prejudice.

Any motion by the petitioner to reconsider this order or to stay its effectiveness pending appeal will be seen as a furtherance of those illegitimate intentions which made this opinion necessary.

**5.** *In re Wally Findlay Galleries, Inc.*, 36 B.R. 849, 851 (Bkrtcy.S.D.N.Y.1984).

**6.** 54 B.R. at 514.

**7.** "We do not, in reversing the bankruptcy court's somewhat hasty conclusion in this case, imply that a finding of lack of good faith would be improper after fuller consideration of the issue on remand.... From the foregoing discussion, it should be clear that a debtor may not counter allegations of bad faith solely with an attempt to relitigate issues presented in its state court case." *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1074 (5th Cir.1986).

**8.** *The Right to Appeal*, 44 J.Urban L. 505, 511 (1967).

**9.** *Sotak v. Sotak*, 438 S.W.2d 490, 491 (Ky.1969).

**10.** *Ex Parte Abdu*, 247 U.S. 27, 38 S.Ct. 447, 62 L.Ed. 966 (1918); *see also Williams v. Shaffer*, 385 U.S. 1037, 87 S.Ct. 772, 774, 17 L.Ed.2d 683 (1967) (J. Douglas, dissenting), to the effect that accepted notions of due process do not guarantee the right of appeal to all litigants.

**11.** *John v. Paullin*, 231 U.S. 583, 34 S.Ct. 178, 58 L.Ed. 381 (1913) (Each state clearly has the right to prescribe the jurisdiction of its appellate courts, the mode and time of invoking that jurisdiction, and the rules of practice to be applied in its exercise).