**In re SPARKLET DEVICES, INC., Debtor.**

**Thomas R. MUELLER, Movant,**

v.

**SPARKLET DEVICES, INC., Respondent.**

**Bankruptcy No. 93–41944–399. Motion No. 4.**

United States Bankruptcy Court, E.D. Missouri, E.D.

April 30, 1993.

Edward Goldenhersh, Norman W. Press-
man, St. Louis, MO, for debtor.

Edward C. Cody, St. Louis, MO, for mov-
ant.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Chief Judge.

### INTRODUCTION

This is a case of a sale of business assets
gone wrong. It presents the Court with
the issue of whether a Chapter 11 petition
filed on the heels of a state court judgment
compelling specific performance of a con-
tract for the sale of the Debtor's business
constitutes "cause" for relief from stay.

### JURISDICTION

This matter is before the Court on the
Motion of Thomas R. Mueller ("Mr. Muel-
ler") for Relief from the Automatic Stay
and for Other Relief. This Court has juris-
diction over the subject matter of this pro-
ceeding pursuant to 28 U.S.C. §§ 151, 157,
1334 and Local Rule 29 of the United
States District Court for the Eastern Dis-
trict of Missouri. The parties have stipu-
lated that this is a "core proceeding" which
the Court may hear and enter appropriate
judgments pursuant to 28 U.S.C.
§ 157(b)(2)(G). Trial of this matter was
conducted on April 19, 1993. After presen-
tation of all evidence, the Court announced
its findings of fact on the record. Post-
trial briefs were submitted on April 21,
1993, and after further consideration of the
legal issues presented, the Court adopts its
prior findings of facts, supplements them
as stated herein and makes the following
conclusions of law.

### FACTS

Sparklet Devices, Inc. ("Sparklet" or the
"Debtor") entered into an Agreement for
Purchase of Assets (the "Agreement") with
Mr. Mueller on February 5, 1992. This
Agreement memorialized the terms of the
parties' negotiations outlined in a Letter of
Intent dated December 20, 1991 between
Mr. Mueller and Sparklet. [Exhibit B, Mo-
tion for Relief]. Under the Agreement,
Sparklet contracted to sell its business, in-
cluding the real estate, building, machin-
ery, equipment, inventory and other assets
to Mr. Mueller for a purchase price of
$750,000.00. However, before the sched-
uled closing, a disagreement ensued and
Sparklet refused to close on the sale. Mr.
Mueller then filed an action in state court
seeking, among other things, specific per-
formance of the agreement.[1]

The state court trial took place in June of
1992, and on March 12, 1993, the state
court entered judgment in favor of Mr.
Mueller, ordering specific performance of
the purchase agreement take place on April
1, 1993. In its order, the court set forth
specifically what actions each party was to
take in order to complete the contract.
[Exhibit A, Motion for Relief]. Conse-
quently, on March 31, 1993, Sparklet con-
vened a meeting of its employees and ad-
vised them that effective the next day their
employment was terminated. On April 1,
1993, in compliance with the order for spe-
cific performance, Mr. Mueller deposited
the purchase price of $322,409.31 in the
Registry of the State Court. Similarly,
Debtor delivered to the Court a fully exe-
cuted and notarized Warranty Deed and
Bill of Sale conveying the business assets
to Mr. Mueller. Mr. Mueller accepted the
keys, took possession of the real estate,
inventory, machinery, work in process, and
other assets on April 1, 1993. He has since

---

**1.** The state court entered a temporary restrain-
ing order on February 21, 1992 and an injunc-
tion on March 11, 1992, forbidding Sparklet

from selling or disposing of any assets subject to
the Agreement, except in the normal course of
business.

operated the business under a new corporate entity formed specifically for this purpose since that date. On April 1, 1993 the state court issued an order granting Sparklet until April 5, 1993 to file its corporate resolutions and deed of release, releasing a lien secured by the real estate of the debtor. Thereafter, on April 4, 1993, Sparklet convened a meeting of its Board of Directors and voted to authorize the officers and agents of Sparklet to sell Sparklet Devices, Inc., pursuant to the court order of March 12, 1993, and to "take any action necessary to complete the transaction." [Exhibit E, Motion for Relief]. Finally, on April 5, 1993, Sparklet delivered a copy of the corporate resolution. The deed of release, however, was not produced.

Debtor filed for relief under Chapter 11 on April 6, 1993,[2] and within two days of the filing, Mr. Mueller filed a Motion for Relief from the Automatic Stay[3] alleging, among other things, bad faith. Mr. Mueller seeks relief in order to return to state court to complete compliance with the March 12, 1993 order of specific performance. Debtor resists lifting the automatic stay and asserts that the petition has been filed in good faith. Debtor believes it is entitled to the benefits of Chapter 11, including the right to reject the purchase agreement as an executory contract (under 11 U.S.C. § 365) and the right to avoid the agreement as a transfer for inadequate consideration (under 11 U.S.C. § 548) in order to regain control of the business and reorganize.

In support of its Motion for Relief, Mr. Mueller elicited testimony that after entry of the order of specific performance, Debtor's former Director of Operations and Executive Vice–President, Gerald L. Rogers ("Mr. Rogers") instructed employees to remove and/or destroy business records, create new records and refer customers to competitors. Debtor's employees, Patricia Hahn and Greg Daniels, however, testified that although Mr. Rogers ordered the removal of books and records, no such documents were destroyed or taken from the business premises. More generally, Mr. Mueller seeks relief for the reason that Debtor's bankruptcy petition is merely an eleventh hour attempt to escape the effect of the state court judgment. He asserts that Debtor's filing is motivated by "seller's remorse" and is an abuse of the process because the purpose of the filing is to undue a sales transaction Debtor now regrets.

Conversely, Debtor asserts that it filed for Chapter 11 relief because it had no alternative means of protecting its business and providing equitable treatment to all of its creditors. Debtor explains that it lacked the financial resources to post a supersedeas bond pending appeal of the state court order of specific performance. Debtor also explains that it could not simply ignore the order because Mr. Mueller had filed or threaten to file a motion to hold Debtor in civil contempt. Thus, Debtor asserts bankruptcy was, indeed, its only option.

Debtor also explains that while it realizes its filing may produce a surprising and drastic result for Mr. Mueller, such a result is a typical consequence of a bankruptcy filing and in no way evidences an intent to abuse the bankruptcy process. To the contrary, Debtor asserts that Mr. Mueller has not been harmed by the bankruptcy filing: he has possession of the premises and is currently conducting business. Debtor believes that what Mr. Mueller is seeking in its relief motion is to be treated better than other unsecured creditors by virtue of having obtained a judgment. For this reason, Debtor believes its bankruptcy petition must be allowed to go forward without interruption.

---

**2.** In fact, Debtor's bankruptcy filing consisted of two separate Chapter 11 petitions because Sparklet Devices, Inc. is a wholly owned subsidiary of Sparklet Aeromarine, Inc. Both corporations filed for bankruptcy on April 6, 1993.

**3.** Upon review of the record, the Court determines that only one motion for relief from stay was filed (evidenced by tender of a single filing fee) although both debtors (parent and subsidiary) are listed in the caption. Since the lead case in the caption of the Motion for Relief is Sparklet Devices, Inc., it is that case which the Court determines the single motion for relief and the single filing fee applies.

## DISCUSSION

■ Under § 362(d)(1) the automatic stay may be terminated "for cause." Further, a petition filed in bad faith justifies relief from the automatic stay. *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir. 1987). *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1027 (11th Cir.1989) *cert. denied*, 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir.1986) (citing cases, see note 2); 149 B.R. 586, 591 (Bankr.W.D.Mo.1993); *In re Choctaw Boundary Farms, Inc.*, 72 B.R. 638, 641 (Bankr.S.D.Miss.1987); *In re RAD Properties, Inc.*, 84 B.R. 827, 829 (Bankr.M.D.Fla. 1988). "Determining whether a debtor's filing for relief [under the Bankruptcy Code] is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of debtor's financial condition, motives, and the local financial realities." *Choctaw*, 72 B.R. at 640. In making this determination, courts have been guided by factors listed in prior decisions regarding bad faith, but no single factor is determinative of bad faith as each case is to be judged on a case by case basis. *In re Prince Manor Apts., Ltd.*, 104 B.R. 414, 415 (Bankr.N.D.Fla. 1989). In this district, the following factors have been considered indicative of whether a debtor has filed in bad faith.

(a) whether the debtor owns but one primary asset, which asset is encumbered by a secured creditor's lien;

(b) whether the debtor employs an insignificant number of non-insider employees;

(c) whether the debtor generates insignificant cash flow;

(d) whether the debtor lacks available sources of income to sustain a reorganization plan and/or make adequate protection payments;

(e) whether the debtor has few unsecured creditors, with relatively small claims;

(f) whether the debtor's primary asset has been posted for foreclosure; and

(g) whether bankruptcy offers the only possibility for forestalling loss of the asset.

*See, In re Reiser Ford, Inc.*, 128 B.R. 234, 237 (Bankr.E.D.Mo.1991), *In re Lindbergh Plaza Assocs., L.P.*, 115 B.R. 202, 206 (Bankr.E.D.Mo.1990).

In *In re Reiser Ford, Inc.*, 128 B.R. 234, 237 (Bankr.E.D.Mo.1991), this Court addressed a factual situation similar to the case *sub judice* except, procedurally, the creditor filed a motion to dismiss for bad faith rather than a motion for relief from the automatic stay. In *Reiser Ford*, the debtor contracted to sell his business and prior to closing on the sale, voluntarily surrendered operations to the purchaser. Then, shortly before the closing was scheduled to take place, the debtor filed for Chapter 11 relief in an effort to avoid completion of the sale contract.

In *Reiser Ford* this Court held that to dismiss a case for want of a good faith filing, the court must find both that objectively, there exists no reasonable possibility for reorganization, and subjectively, that the debtor filed its petition with an honest intention to effectuate a reorganization. *Id.* at 237 *citing Carolin Corp. v. Miller*, 886 F.2d 693, 701 (4th Cir.1989). Applying this two part test in *Reiser Ford*, this Court held that the debtor's Chapter 11 petition was filed in bad faith because the debtor enjoyed no reasonable possibility of reorganization and filed its petition solely for the purpose of avoiding completion of the sale contract.

■ Generally, the factors used to demonstrate bad faith are the same whether the court is considering a motion for relief or a motion to dismiss for lack of good faith. *Dixie Broadcasting*, 871 F.2d at 1029. Thus, in the instant case, the Court must determine whether objectively, there exists no reasonable possibility of reorganization, and whether subjectively, whether Debtor filed without an honest intention to reorganize.

■ Applying this Court's analysis in *Reiser*, the Court finds that both of the *Carolin* criteria are present in the instant case. Objectively, this Debtor was not an operating business and had no employees when it filed its bankruptcy petition. Mr.

Rogers, Vice President of the Debtor, informed all employees on March 31, 1993 that they would be terminated. On April 1, 1993, he deposited a Warranty Deed and an executed Bill of Sale made out to Mr. Mueller evidencing sale of certain assets. Mr. Rogers further surrendered the keys and possession of the premises to Mr. Mueller on April 1, 1993. Lastly, on April 5, 1993, Mr. Rogers delivered a corporate resolution approving sale of the business, its realty and other assets. Thus, on the date of filing, debtor had no business to reorganize.

Debtor recounts that although it had nothing on the date of filing to reorganize, it lacked the financial resources to file the necessary supersedeas bond to stay the state court order of specific performance and thus had to resort to bankruptcy for relief. Debtor contends that filing a Chapter 11 petition in lieu of a supersedeas bond is a valid use of the Bankruptcy Code as evidenced by Texaco Inc.'s Chapter 11 petition because Texaco filed to avoid posting a supersedeas bond.

Initially, the court notes that the history of the Texaco bankruptcy case does not disclose that the bankruptcy petition was challenged on the ground of bad faith. *See Kirk v. Texaco, Inc.*, 82 B.R. 678, 679–80 (S.D.N.Y.1988). Nonetheless, this Court recognizes that other courts have held that a Chapter 11 filing may be used as the functional equivalent of a supersedeas bond as in the *A.H. Robins* and *Mansville* type cases. The great majority of courts, however, have generally found that a debtor abuses the bankruptcy process when it files a bankruptcy petition in lieu of filing a supersedeas bond in an effort to avoid the consequences of an adverse state court decision. *In re Wally Findlay Galleries, Inc.*, 36 B.R. 849, 851 (Bankr.S.D.N.Y. 1984); *Little Creek Dev. Co.; In re Edwards*, 140 B.R. 515 (Bankr.W.D.Mo.1992); *In re Smith*, 58 B.R. 448 (Bankr.W.D.Ky. 1986); *In re Karum Group, Inc.*, 66 B.R. 436 (Bankr.W.D.Wash.1986); *In re Davis*, 93 B.R. 501 (Bankr.S.D.Tex.1987). *Contra, In re Alton Telegraph Printing Co.*, 14 B.R. 238 (Bankr.S.D.Ill.1981); *In re McLaury*, 25 B.R. 30 (Bankr.N.D.Tex.

1982); *In re Corey*, 46 B.R. 31 (Bankr.D. Hawaii 1984).

One court explained the distinction between the *Mansville*-type cases and those in which an abuse of the process has been found, concluding that the "sheer magnitude" and nature of *Mansville*-type debtors permitted such filings. *Smith*, 58 B.R. at 450. The *Smith* court stated:

There is a gross distinction between a solvent sole proprietor with a single judgment creditor, on the one hand, and on the other a multinational manufacturer faced with mass tort litigation from a sizeable segment of the consumer public. The latter type of case raises questions of the wholesale redistribution of loss which rise to the level of public policy, with the bankruptcy court acting only as a sort of intermediate-term claims bank, preserving actual and undiscovered product liability claims until they can be found, asserted and resolved ... *Id.*

*In re Holm*, 75 B.R. 86 (Bankr.N.D.Cal. 1987), the Court explained the distinction between the nonmass tort cases in which filing in lieu of a supersedeas bond was permitted (*Alton Telegraph Printing Co., McLaury,* and *Corey*) and those cases in which it is not permitted. *Holm* explained that if the debtor could satisfy the judgment while continuing its business operations, bankruptcy was inappropriate. *Id.* at 87. This distinction summarizes the factors considered determinative in *Alton Telegraph Printing Co.* In *Alton*, the court held that where a debtor is forced to file a petition in bankruptcy in order to preserve its status as an ongoing concern and to protect its employees and its creditors while claims against it were litigated on appeal, and the bankruptcy is proceeding in an orderly manner, such filing is not in bad faith. *Id.* at 241.

Thus, in those cases in which a court has permitted a Chapter 11 filing as a functional equivalent of a supersedeas bond, one of two standards was met: (1) a multinational company faced mass tort litigation; or (2) a large judgment would force the debtor to close its business and liquidate. In both lines of case, however, the crucial element

to the finding of good faith has been the fact that the Debtor was an on-going concerns with employees and the means to reorganize. *See, Kirk v. Texaco, Inc.*, 82 B.R. at 679. *Alton Telegraph Printing Co.*, 14 B.R. at 241 ("The Telegraph employs a substantial number of people, and is a viable business").

In the instant case, neither exception is present. In fact, in order for this corporate Debtor to reorganize, it must first recover its business assets which it voluntarily transferred in compliance with the state court order of specific performance. The Court has found no case, including those cited by Debtor in its post-trial brief, in which a debtor which filed bankruptcy in lieu of a supersedeas bond was not an ongoing concern or an entity possessing the means for an orderly liquidation.

In the instant case, the Debtor ceased all business operations pre-petition. The Debtor voluntarily discharged its employees, voluntarily surrendered the deed to its premises, voluntarily issued a bill of sale for other business assets, voluntarily surrendered possession of the premises and voluntarily authorized a corporate resolution authorizing and directing each of these actions. Because each of these voluntary acts divested the Debtor of its means for reorganization or orderly liquidation, these acts are inconsistent with Debtor's assertion that it is filing bankruptcy in lieu of a supersedeas bond in order to protect its business interests. This Debtor had no business interests on the date of filing and argument to the contrary is disingenuous.

Rather, the Court believes this Debtor is simply attempting to use the bankruptcy system and its special provisions (namely § 365) to avoid a state court order and recover the very property essential for Debtor's reorganization which Debtor previously transferred voluntarily. While filing for relief under the Bankruptcy Code in lieu of posting a supersedeas bond may in some instances be a valid use of the bankruptcy process, in an instance such as this, where the filing is prompted by a desire to render null an adverse state court decision, and the Debtor is no longer is possession of the business which it seeks to reorganize, such use of the bankruptcy process is inappropriate. For the foregoing reasons, the Court finds that this Debtor lacks the objection ability to reorganize.

Considering Debtor's subjective intent, the Court again focuses on the timing of the filing and concludes that the Debtor's argument rings hallow. Had Debtor truly wished to reorganize, it could have filed its petition at any time before having voluntarily divested itself of its business. The purchase agreement had been in various stages of negotiation or litigation since December, 1991. At any time over the course of the last 15 months, Debtor could have sought the protection of this Court for the same purposes it now advocates. Instead, Debtor sat on its rights and chose to gamble at each step in the process. First, after signing the purchase agreement, Debtor refused to close on the sale, hoping instead, to be relieved, perhaps voluntarily, of its obligations under the contract. Then, after being compelled by injunction to protect Mr. Mueller's interests under the contract, Debtor chose to gamble on the outcome of the state court trial, hoping again to be relieved of its obligations under the contract. After a five day trial, and no immediate judgment, debtor once more sat on its rights, this time for nearly eight months while the case was under submission. Finally, even after receipt of judgment from the state court, Debtor delayed in protecting its interests and did not seek the assistance of this Court until after divesting itself of title and possession of the business.

If Debtor was seeking to retain its property through the benefits of a bond or it bankruptcy equivalent, why did the Debtor voluntarily surrender its property? Indeed, when asked by the Court why this Debtor did not file at any time before the final order from the state court, Debtor's counsel responded that this was a good question for which no one knew the answer. These facts are not merely an indictment of Debtor's inaction but they speak to the Debtor's subjective intent to reorganize. There were many opportunities along the process at which Debtor could

have filed and obtained the certainty of bankruptcy relief. Instead, Debtor delayed until it had nothing to reorganize.

In addition, Debtor's schedules reveal that Debtor has relatively few unsecured creditors other than the debt to Mr. Mueller. In fact, according to Debtor's schedules, Debtor's unsecured debts are approximately $50,000.00 while the obligation to Mr. Mueller is $750,000.00. This fact combined with the timing of Debtor's petition demonstrate to this Court that Debtor's filing was merely to delay or frustrate the legitimate efforts of its largest creditor and to enable the Debtor to avail itself of the avoiding powers of section 365 of the Code. For these reasons the Court finds that this Debtor lacks the subjective intent to effectuate a reorganization.

Lacking both the objective ability and subjective intent to reorganize, the Court finds that "cause" exists under § 362(d)(1) to lift the stay to permit Mr. Mueller to return to state court and proceed under the order of specific performance.

Similarly, because this corporate debtor is not operating, "cause" for relief from the automatic stay also exists under the seven *Lindbergh Plaza Assocs.* criteria.

1. this is essentially a single asset case, although on the date of filing, this Debtor did not even possess its single asset;

2. this Debtor has no employees;

3. this Debtor generates no cash flow;

4. this debtor has no sources of income to sustain a reorganization or make adequate protection payments;

5. this Debtor has few unsecured creditors with relatively small claims;

6. this Debtor's primary asset was transferred pre-petition;

7. bankruptcy offers the only possibility of this debtor forestalling complete divestiture of its asset.

Thus, under either the *Carolin* or *Lindbergh Plaza Assocs.* analysis, this Debtor's petition was not filed in good faith and such lack of good faith is "cause" for relief from the automatic stay. Accordingly,

IT IS ORDERED that the Motion for Relief of Thomas R. Mueller is Granted in that Movant is authorized to proceed in the Circuit Court of the State of Missouri, Twenty-second Judicial Circuit, under Cause No. 924–00036 and for such purposes the stay provisions of 11 U.S.C. § 362(a) are lifted.