## In re FRATERNAL COMPOSITE SERVICE, INC.

### No. 03–62946.

United States Bankruptcy Court, N.D. New York.

Oct. 16, 2003.

Richard L. Weisz, Hodson, Russ, Andrews, Woods & Goodyear, Albany, NY, for Debtor.

Guy A. Van Baalen, Utica, NY, Assistant U.S. Trustee.

## LETTER DECISION AND ORDER

STEPHEN D. GERLING, Chief Judge.

For purposes of this Decision, the Court will briefly summarize the key facts of this contested matter as presented to it in the form of a motion filed on July 11, 2003, by James D. Karczewski ("Karczewski"), a shareholder in Fraternal Composite Services, Inc. ("Debtor" or "corporation"), owning a 1/3 interest therein, seeking dismissal of the case pursuant to § 1112(b) of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code").

Debtor alleges that in 1999 Karczewski commenced an action in New York State Supreme Court pursuant to § 1104(a) of the New York Business Corporation Law ("NYBCL"), seeking dissolution of the corporation. Debtor responded by filing a motion pursuant to NYBCL § 1118, electing to purchase Karczewski's stock in the corporation rather than have it dissolved. Both parties employed experts to prepare a valuation of the stock. The Debtor's expert valued Karczewski's 1/3 interest at $304,000; Karczewski's expert valued the same 1/3 interest at $1.1 million, after making adjustments for the "dissipation of corporate assets." *See* Movant's Motion at

Exhibit B, ¶ 34 and ¶ 14, respectively. William F. Chandler, the Referee appointed by the Hon. John J. Grow ("Judge Grow"), Justice, New York State Supreme Court, County of Oneida, after considering both experts' opinions concluded that Karczewski's 1/3 interest in the Debtor had a value of $808,500. Objections to the Referee's Report were filed by both parties and he issued a response in early 2003. *See* Movant's Motion at Exhibit C. Judge Grow was scheduled to hear the matter and issue a judgment on April 30, 2003, valuing Karczewski's interest in the corporation.[1] The Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code on April 29, 2003.

Attorney Donato, on behalf of Karczewski, stresses the fact that it was the Debtor that made the § 1118 election and argues that the filing of the Debtor's case is premature and was made in bad faith. Attorney Richard Weisz, on behalf of the Debtor, defends having filed the case before a judgment was entered, arguing that if Debtor had not, Karczewski would have levied on its bank accounts and Debtor would have been unable to pay its employees and fulfill its contracts, resulting in insolvency. It is the Debtor's position that this Court now has a "blank slate" and that there is no collateral estoppel which would prevent this Court from making a de novo determination of the valuation of the stock or revoking the Debtor's § 1118 election, thus allowing Kraczewski and Carol Gallman ("Gallman"), the Debtor's president and holder of 2/3 of the shares in the corporation, to continue as shareholders.

According to Exhibit "A" of the Debtor's petition, it had assets of $2,426,794 as of February 28, 2003, and its debts totaled

---

1. At the hearing on the motion held on October 7, 2003, Attorney Stephen Donato alleged that Judge Grow was also to consider whether to allow the payment of any judgment to be made in installments.

$1,820,418.80, which apparently includes debts arising from the shareholders' interest. The Summary of Schedules actually shows total liabilities of $374,799.01. Of its unsecured debt of $334,590.47, $248,992.16 is allegedly owed to Gallman. The secured debt amounts to $40,208.54, which includes two car loans and the lease of a telephone system. According to its schedules, the Debtor estimates its monthly revenues to be $342,655 and its monthly expenses to be $342,300, including $160,000 in payroll expenses.

## DISCUSSION

A bankruptcy court may dismiss a chapter 11 case "for cause" pursuant to Code § 1112(b). Courts have held that a lack of good faith in filing the petition is "cause" for dismissal. *See Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir.1994) (citations omitted). Karczewski, as the movant, has the initial burden of establishing that the petition was not filed in good faith, looking at the totality of circumstances. The burden of proof then shifts to the Debtor to establish that the filing was made in good faith. *See In re Gleason*, 2001 WL 1597960 at *2 (Bankr.N.D.Ill.) (citation omitted). In this regard, the Court's analysis "centers on the underlying inquiry of whether reorganization is the proper course of action in a particular case." *Id.* (citation omitted); *see also Marsch*, 36 F.3d at 828 (indicating that the test of good faith is "whether a debtor is attempting to unreasonably deter and harass creditors or attempting to affect a speedy, efficient reorganization on a feasible basis." (citation omitted)).

In *In re Alton Telegraph Printing Co.*, 14 B.R. 238 (Bankr.S.D.Ill.1981), the bankruptcy court denied a motion to dismiss

the case, finding that the Chapter 11 case had been filed in good faith because the debtor had an ongoing and viable business, employed a substantial number of people, and the case was progressing "in an orderly and expeditious manner" with the debtor having filed a plan of reorganization. *Id.* at 241. In *Alton* a creditor held a claim of $9.2 million based on a judgment arising from a libel and defamation suit brought against the debtor, which published a local newspaper and had been in business for over 100 years. The debtor acknowledged having filed to avoid the forced sale and liquidation of its business. *Id.* It also was unable to obtain a bond to halt execution on the judgment while the matter was on appeal because of its amount in relation to the debtor's net worth. *Id.* The court concluded that

> it becomes clear that the debtor was forced into filing a Chapter 11 bankruptcy petition in order to preserve its status as an ongoing concern and protect its employees and its creditors while the claims against it are litigated. In light of the emergency nature of this filing, and the progression of this case leading up to an orderly and equitable distribution to its assets, it is clear that the filing of the Chapter 11 petition by the Telegraph is in good faith.

*Id.*

*Alton*, however, appears to be a minority view. *See, e.g. In re Smith*, 58 B.R. 448, 450 (Bankr.W.D.Ky.1986) (finding the reasoning in *Alton* "spongy at best, demonstrates a blithe disregard for the state judicial process, and is to be avoided."). The court in *Smith* preferred the language of Bankruptcy Judge Ryan in *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849 (Bankr.S.D.N.Y.1984),[2] in which it was found that

had been entered.

---

**2.** In *Wally Findlay* the petition had been filed the same day that the judgment in state court

It is clear that the debtor did not file its petition to reorganize, but rather as a litigating tactic in its dispute with (the judgment creditor). Neither the debtor (corporation nor its principal) has sufficient assets to post a bond in order to stay these judgments pending appeal. . . . This court should not, and will not, act as a substitute for a supersedeas bond of state court proceedings.

*Smith,* 58 B.R. at 450–51, quoting *Wally Findlay,* 36 B.R. at 851. The court in *Smith* found that "upon the use of federal bankruptcy law to defy legitimate state ends—we may act to close the federal door, which we now do. By separate order this case will stand dismissed with prejudice." *Smith,* 58 B.R. at 451.

"Many decisions have considered whether to dismiss a bankruptcy petition, grant similar depositive relief or award sanctions on the basis of the alleged 'bad faith' of the debtor in seeking to avoid the effect of litigation in another court." *In re Sletteland,* 260 B.R. 657, 661 (Bankr.S.D.N.Y. 2001). The court in *In re Muskogee Environmental Conservation Co.,* 236 B.R. 57, (Bankr.N.D.Okla.1999), in reviewing several decisions, observed that there was a distinction between the cases granting dismissal on bad faith grounds and those denying dismissal. It noted that the cases dealing with smaller judgments in which the debtor had the ability to satisfy the judgment without losing the ability to stay in business were dismissed; whereas, the cases in which there were larger judgments that "would render the debtor unable to continue its business and allowed the judgment creditor only a partial recovery" were not dismissed on bad faith grounds. *See id.* at 67. The court in *Muskogee Environmental* concluded that in the final analysis its determination of whether to dismiss the case should be based on "whether Chapter 11 of the United States Bankruptcy Code exists for the purpose of allowing a debtor the option of litigating a dispute with a single party . . . in an alternate forum, when the debtor has no other need of or use for the bankruptcy court." *Id.* at 68. The court concluded that such a purpose was an impermissible use of Chapter 11. *Id.* The court noted that "[w]hat the Debtors are asking this Court to do is to expend its resources to resolve a two-party dispute involving exclusive issues of state law." *Id.* The court's conclusion was based on the finding that the debtors had few creditors and had the ability to post the necessary bond and to satisfy the judgment of the state court without losing their ability to operate their business. *Id.*

In *In re SGL Carbon Corp.,* 200 F.3d 154 (3d Cir.1999), the Court of Appeals for the Third Circuit concluded that the debtor's chapter 11 petition lacked a valid reorganizational purpose and was not filed in good faith, thus warranting dismissal. In that case, several antitrust lawsuits had been filed against the debtor, one of which was a class action. There had been no judgment rendered in the district court, but it was estimated that SGL Carbon's potential liability was approximately $240 million. The district court in the case denied the motion to dismiss the bankruptcy case based on a finding that

[t]he distractions of the litigation pose a serious threat to the continued successful operations of [the debtor]. Furthermore, the potential liability faced by [the debtor] could very well force it out of business. Consistent with the policies and purposes of Chapter 11 which encourage early filing so as to increase the possibility of successful reorganization, the Court will not allow [the debtor] to wait idly by for impending financial and operational ruin, when [the debtor] can take action now to avoid such a consequence.

*In re SGL Carbon Corp.*, 233 B.R. 285, 291 (D.Del.1999). The Third Circuit on appeal concluded that the district court's finding that the petition had been filed at the appropriate time "to avoid the possibility of a significant judgment that could very well force [SGL Carbon] out of business.'" was clearly erroneous. *SGL Carbon*, 200 F.3d at 163. The Third Circuit based its conclusion on evidence presented of the debtor's economic strength and the fact that the possible judgments were not likely to force SGL Carbon out of business. *Id.* It noted that while the drafters of the Code recognized the need for early access to the bankruptcy court, it did not "open the door to premature filing, nor does it allow for the filing of a bankruptcy petition that lacks a valid reorganizational purpose." *Id.*, citing *Marsch*, 36 F.3d at 828. The court went on to clarify its decision, noting,

> We do not hold that a company cannot file a valid Chapter 11 petition until after a massive judgment has been entered against it. Courts have allowed companies to seek the protections of bankruptcy when faced with pending litigation that posed a serious threat to the companies' long term viability. *See, e.g., Baker v. Sparrowbush Assocs. (In re Cohoes Industrial Terminal, Inc.)*, 931 F.2d 222 (2d Cir.1991); *In re The Bible Speaks*, 65 B.R. 415 (Bankr.D.Mass. 1986); *In re Johns–Manville*, 36 B.R. 727 (Bankr.S.D.N.Y.1984). In those cases, however, debtors experienced serious financial and/or managerial difficulties at the time of filing. * * * The mere possibility of a future need to file, without more, does not establish that a petition was filed in "good faith." ... Although SGL Carbon may have to file for bankruptcy in the future, such an attenuated possibility standing alone is

not sufficient to establish the good faith of its present petition.

*SGL Carbon*, 200 F.3d at 164.

The Third Circuit in *SGL Carbon* included in its analysis the case of *Johns–Manville*, cited by the Debtor herein in support of its assertion of good faith in filing its petition. The Third Circuit noted that the plaintiffs in *Johns–Manville* had already "recovered nearly $4 million in punitive damages against the company" and was confronted with approximately 16,000 other pending lawsuits and the possibility of the "'filing of an even more staggering number of suits over the course of 20–30 years.'" *SGL Carbon*, 200 F.3d at 169, quoting *Johns–Manville*, 36 B.R. at 729. The court in *Johns–Manville* had denied a motion to dismiss the case, filed by the creditors' committee approximately sixteen months after negotiations involving the debtor's plan of reorganization had failed, concluding that it was nothing more than an attempt to "extract concessions in stalled negotiations." *Id.* at 731.

The Third Circuit in *SGL Carbon* reversed the district court and remanded the case for dismissal based on a finding of a lack of good faith, concluding that SGL Carbon was financially healthy and had no need to reorganize and noting that "[a]llowing SGL Carbon's bankruptcy under these circumstances seems to us a significant departure from the use of Chapter 11 to validly reorganize financially troubled businesses." *SGL Carbon*, 200 F.3d at 169.

The bankruptcy court in *Sletteland* did an extensive analysis of the position taken by the Second Circuit Court of Appeals, focusing in particular on the Second Circuit's decision in *Cohoes Industrial*, another decision relied on by the Debtor in the case now before this Court, noting that in *Cohoes Industrial* the Second Circuit held

that a filing would be considered frivolous if there were "no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings," equating lack of "demonstrable intent to reorganize" with "bad faith." *Sletteland*, 260 B.R. at 661, quoting *Cohoes Industrial*, 931 F.2d at 227. At the same time, the Second Circuit also indicated that "[a]lthough a debtor need not be *in extremis* in order to file [a Chapter 11] petition, it must, at least, face such financial difficulty that, if it did not file at that time, it could anticipate the need to file in the future." *Id.* at 228.

In *Cohoes Industrial* a default judgment had been entered against the debtor in an action seeking to reacquire possession of an apartment complex leased by the debtor. In addition to the state court judgment, which it had appealed, the debtor was confronted with the loss of a primary tenant, as well as having to comply with an order of New York State to build a sewer connection estimated to cost between $125,000 and $250,000. *Id.* at 228. In addition, it needed a new roof on its building at a cost of $150,000 to $300,000. *Id.* It was also in arrears on its mortgage payments and was indebted to its suppliers. *Id.* The Second Circuit concluded that the bankruptcy court, as affirmed by the district court, had abused its discretion when it awarded sanctions against the debtor for filing what the bankruptcy court had deemed to be a frivolous petition. *Id.* at 230.

The court in *Sletteland*, having reviewed the Second Circuit's decision in *Cohoes Industrial*, as well as the Second Circuit's decision in *In re C–TC 9th Avenue Partnership*, 113 F.3d 1304 (2d Cir.1997), concluded that the court's focus should be on whether there existed on the date of filing "a good faith intent to reorganize and a lack of any intent to use the bankruptcy process solely as a means to delay, frustrate and relitigate State court issues." *Sletteland*, 260 B.R. at 662.

The court in *Sletteland* considered several factors in deciding whether to dismiss the chapter 11 filing where the debtor was confronted with an unfavorable judgment which it wished to appeal:

(1) ability to post a bond and/or pay the judgment;

(2) whether the debtor had transferred assets or placed them beyond the reach of creditors after the judgment;

(3) is the case a two party dispute between the debtor and the judgment creditor and does the debtor have employees or an ongoing business;

(4) has the debtor exhausted its state court remedies in attempting to appeal without paying a bond and has the debtor examined the availability of other alternatives to bankruptcy filing;

(5) expenses of the appeal which would accrue as priority claims;

(6) is the filing simply an intent on the debtor's part to relitigate the state court judgment.

*Id.* at 663–666. Upon a review of the above-referenced factors, the court denied the motion to dismiss the case.

■ At this stage, it would premature for this Court to examine the "*Sletteland*" factors since there has as yet been no judgment rendered in the State Court. In addition, allegedly there has been no determination made concerning whether the Debtor would be allowed to satisfy any judgment in installments. The arguments made by Debtor's counsel, asking this Court to conclude that the petition was filed in good faith, are based on what he envisions would be the worst possible scenario should the Debtor be required to pay

Karczewski over $1 million in satisfaction of any judgment. It is the Debtor's position that it would not be financially eligible for a *supersedeas* bond and, therefore, would not be in a position to obtain a stay pending appeal in the State Court action. The Debtor also argues that if Karczewski were to execute on any judgment obtained in State Court, the Debtor would be unable to pay its employees and would be unable to fulfill its contracts. Yet, the Debtor does not dispute that it is current on those obligations and is not, otherwise, experiencing any immediate and serious financial and/or managerial difficulties.

■ Under those circumstances, this Court must conclude, as did the Third Circuit in *SGL Carbon*, that the Debtor's filing is premature. At this stage in the State Court proceedings, this Court can only conclude that it was the Debtor's intent to use the bankruptcy process solely as a means to delay, frustrate and relitigate State Court issues. As the court in *Muskogee Environmental* concluded, the Code was not intended to allow a debtor the "option of litigating a dispute with a single party ... in an alternate forum, when the debtor has no other need of or use for the bankruptcy court." *Muskogee Environmental*, 236 B.R. at 67. Whether or not to revoke the Debtor's § 1118 election is a matter better addressed by the State Court. So too is the issue of the manner by which Karczewski is entitled to execute on any judgment rendered by the State Court should it determine that revocation of the election is not warranted under the circumstances.

Based on the foregoing, it is hereby

ORDERED that Karczewski's motion seeking dismissal of the Debtor's petition pursuant to Code § 1112(b) is granted.